TECHNICON ELECTRONICS CORP., Respondent, v AMERICAN HOME ASSURANCE COMPANY et al., Defendants, and ATLANTIC MUTUAL INSURANCE COMPANY et al., Appellants.

Second Department, October 3, 1988

### APPEARANCES OF COUNSEL

*Bower & Gardner (Barry G. Saretsky, Sidney Rosen, Marsha Weinstein* and *Eric Dranoff* of counsel), for appellants.

*Anderson Russell Kill & Olick, P. C. (Jerold Oshinsky, Nicholas J. Zoogman* and *Lynn A. Stansel* of counsel), for respondent.

*Rivkin, Radler, Dunne & Bayh (William M. Savino, Stephen J. Smirti, Jr.,* and *Lawrence A. Levy* of counsel), for Fireman's Fund Insurance Company, defendant.

*Drinker Biddle & Reath (Timothy C. Russell* and *Patricia A. Gotschalk* of counsel), for Lumberman's Mutual Casualty Company, defendant.

*Covington & Burling (John G. Buchanan, III, William F. Greaney, Frederick G. Herold* and *Michael E. Tankersley* of counsel), and *Wormser, Kiely, Alessandroni, Hyde & McCann (Lawrence M. McKenna* of counsel), for Carter Day Industries, Inc., and others, *amici curiae.*

*Shea & Gould* for American Insurance Association, *amicus curiae.*

### OPINION OF THE COURT

SPATT, J.

On this appeal, we are asked to determine whether the intentional discharge of waste materials into waterways over a course of years by a manufacturer in the regular course of

its business was "sudden and accidental" so as to require the appellants to defend or indemnify the plaintiff pursuant to liability insurance policies issued to the plaintiff. For the reasons that follow, we find that the intentional discharge of waste materials into the environment involved in this case was not "sudden and accidental" and, therefore, was within the express terms of the "pollution exclusion" contained in the policies at issue.

### BACKGROUND

The plaintiff, Technicon Electronics Corp. (hereinafter Technicon), is a Delaware corporation having its principal place of business in Tarrytown, New York. Technicon owns and operates a plant in Humacao, Puerto Rico, for the manufacture of machines to analyze blood samples. Technicon alleges in the action at bar that it has been named as a defendant in a personal injury action filed in the Superior Court of Puerto Rico, Humacao Part, entitled *Carmen Vellon Maldonado et al. v Squibb Manufacturing Enterprises, Inc.* (hereinafter the underlying personal injury action). The underlying personal injury action is based upon "bodily injury which allegedly occurred as a result of exposure to alleged toxic chemicals allegedly discharged from Technicon's [Puerto Rican] plant". Technicon further alleges at bar that it has "been informed by the United States Environmental Protection Agency (hereinafter EPA) that it may be a potentially responsible party with respect to clean-up and emergency response costs connected with the Frontera Creek in Humacao, Puerto Rico". These costs were allegedly incurred as a result of property damage caused by exposure to the same hazardous substances discharged from the Technicon plant.

The defendants are 15 named insurance companies. All of the defendants are alleged to have sold Technicon primary or excess comprehensive general liability polices covering various periods of time from July 20, 1971, through August 1, 1980. Both appellants, Centennial Insurance Company (hereinafter Centennial) and Atlantic Mutual Insurance Company (hereinafter Atlantic Mutual), are defendants who sold Technicon a primary comprehensive general liability policy.

The amended complaint in the underlying personal injury action, which is dated February 27, 1985, alleges the following:

"1. During several years and up to the present [the defen-

dant] Technicon Electronics Corporation [has] been discharging toxic waste materials * * * into the Frontera Creek and other bodies of water which flow through the Humacao Industrial Park * * * as well as to the nearby land and overall environment * * *

"3. The discharge of toxic materials * * * by the defendants referred to above, *has been made knowingly* in violation to [sic] Federal and local dispositions [sic] * * *

"7. The proximate cause of the damages suffered by each of the plaintiffs would be the concurrent negligence of the defendant Technicon Electronics Corporation; Reedco, Inc. and Squibb Manufacturing Inc. * * * as they contaminated with toxic wastes not only the bodies of water, but the land to which plaintiffs had access and also the surrounding air" (emphasis supplied).

The plaintiffs in the underlying personal injury action are residents of the "Civdad Cristiana Urbanization", which is adjacent to the Technicon plant. The plaintiffs allege that the long-term discharge of toxic waste by the Technicon plant caused the contamination of the "Civdad Cristiana Urbanization", which resulted in serious personal injuries to the plaintiffs.

Significantly, in its certified answer in the underlying personal injury action dated June 6, 1985, Technicon conceded that, before 1979, it had intentionally discharged industrial wastes into a creek which flowed into Frontera Creek; that between 1979 and 1981 it had "transported its industrial wastes to the Prasa facilities in Puerto Nuevo"; and from 1981 to 1985, it had intentionally discharged its industrial waste into the Prasa System, a total period of approximately six years. The specific concession of intentional discharge set forth in Technicon's answer is as follows: "During the period between 1979-1981, Technicon transported its industrial wastes to the PRASA facilities in Puerto Nuevo; since 1981, Technicon has been discharging directly into the PRASA System in accordance to [sic] applicable permits and regulations. Additionally, it is hereby noted that any and all discharges by Technicon prior to 1979, into an unnamed creek which in turn, flows into Frontera Creek, were made pursuant to applicable permit applications".

Technicon demanded that both of the appellants undertake its defense in the underlying personal injury action. After the appellants refused to do so, Technicon brought the instant

declaratory judgment action against them and the other insurance companies. The complaint in this action avers that "the claims asserted against Technicon in the Puerto Rico action and the EPA proceeding are within the coverage of the insurance policies which defendants sold to Technicon and are not excepted or excluded therefrom". Therefore, Technicon asserts, the defendants are obligated to defend and indemnify it from any liability incurred in the underlying personal injury action. In addition, Technicon contends that the defendants are obligated to pay for the defense of the EPA matter and indemnify it with respect to any liability for costs incurred in that proceeding.

In their answers, the appellants interposed a number of affirmative defenses. The third affirmative defense asserted by each of the appellants alleges that their respective policies exclude from coverage any loss resulting from the discharge or dispersal of the toxic chemicals or pollutants unless such discharge is "sudden and accidental".

Technicon moved for partial summary judgment only as to the first and third causes of action, and only insofar as those causes of action were asserted against the appellants. These causes of action alleged, *inter alia,* that the appellants must defend Technicon in the underlying personal injury action and the EPA matter. The appellants cross-moved for summary judgment for a declaration that they have neither a duty to defend nor a duty to indemnify Technicon with respect to either the underlying personal injury action or the EPA matter. The appellants asserted that no duty was owed because (1) any liability for pollution has been excluded from coverage pursuant to the "pollution exclusion" clause contained in the policies; (2) Technicon breached a condition in the policies which required it to immediately give notice to its insurers; and (3) the EPA matter was not a lawsuit in which covered "damages" were being sought.

In a decision dated February 18, 1986, which was later embodied in an order and judgment (one paper) dated March 11, 1986, the Supreme Court, Westchester County (Dachenhausen, J.), granted Technicon's motion for partial summary judgment, and the appellants were directed to defend Technicon in the underlying personal injury action and the EPA matter. The court held that there were issues of fact present with respect to each of the defenses raised by the appellants "and, thus, until those issues of fact are resolved, [the appellants] must provide Technicon with a defense."

We now reverse the order and judgment and declare that neither Atlantic Mutual nor Centennial owes any obligation to Technicon in connection with either the underlying personal injury action or the EPA matter emanating from the alleged intentional pollution of Frontera Creek and its environs.

## THE "POLLUTION EXCLUSION" CLAUSE

Both of the insurance policies relied on by Technicon in seeking to impose upon the appellants an obligation to defend the underlying personal injury action contain the following standard provision, which is known as a "pollution exclusion": "This insurance does not apply * * * to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental"* (emphasis supplied).

The two-pronged argument advanced by the appellants with respect to this clause is straightforward. First, since the complaint in the underlying personal injury action alleges that Technicon "knowingly" discharged toxic waste into Frontera Creek, and since in its answer Technicon conceded that it had been intentionally discharging industrial wastes into a creek which fed into Frontera Creek, and into the Prasa system over a number of years, the appellants assert that it is impossible for the plaintiffs in the underlying personal injury action to recover on a theory that the discharge was "accidental". The appellants contend that Technicon's admission that it intentionally discharged pollutants is antithetical to the concept of an event occurring accidentally and, therefore, their policies provide no coverage. Second, the complaint in the underlying personal injury action alleges that Technicon has been knowingly discharging toxic waste into the water "during several years and up to the present". In its answer, Technicon concedes that it has intentionally discharged industrial waste for approximately six years. Therefore, the appellants contend, this could not be a "sudden" discharge. The appellants conclude that since the intentional discharge of waste by Technicon over a course of years could be neither "sudden" nor "accidental", the pollution exclusion serves to

relieve them from the obligation to either defend or indemnify in these matters.

Technicon responds to this argument by contending that (1) the "pollution exclusion" language in the policies is ambiguous and raises a triable issue as to the intent of the parties, (2) since it did not intend to cause the harm or resultant damages alleged in the underlying complaint, its intentional discharge of toxic waste can be considered "accidental", and (3) the word "sudden" can be interpreted to mean "unexpected" and under such a definition, it is not limited to an instantaneous happening but can be applied to a long-term discharge of pollutants.

We agree with the appellants' contention that the pollution exclusion clause is unambiguous in the context of the facts in this case and operates to relieve them of any obligation to defend or indemnify Technicon in connection with the alleged intentional, long-standing contamination of Frontera Creek and its environs.

## I

In so finding, we are, of course, cognizant of the settled rule prevalent throughout this country that an insurer's duty to furnish a defense is broader than the duty to indemnify *(see, Colon v Aetna Life & Cas. Ins. Co.,* 66 NY2d 6, 8; *Seaboard Sur. Co. v Gillette Co.,* 64 NY2d 304, 310; *Ruder & Finn v Seaboard Sur. Co.,* 52 NY2d 663, 669; *Sturges Mfg. Co. v Utica Mut. Ins. Co.,* 37 NY2d 69, 72; *National Cas. Ins. Co. v City of Mount Vernon,* 128 AD2d 332; *Baron v Home Ins. Co.,* 112 AD2d 391, 392; *New York Cent. Mut. Fire Ins. Co. v Heidelmark,* 108 AD2d 1093, 1094; *see also,* 14 Couch, Insurance 2d § 51.35 [1982 rev ed]).

As the Court of Appeals stated in *International Paper Co. v Continental Cas. Co.* (35 NY2d 322, 325), "if [an] insurer is to be relieved of a duty to defend it is obligated to demonstrate that the allegations of the complaint [in the underlying action] cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, *in toto,* are subject to no other interpretation". In our view, the appellants have met that burden.

Neither the complaint nor Technicon's answer in the underlying personal injury action make reference to any "sudden" or "accidental" discharge of toxins. Although paragraph 7 of the amended complaint in the underlying personal injury action alleges that "[T]he proximate cause of the damages

would be the concurrent negligence of the defendant Technicon * * * as [it] contaminated with toxic wastes not only the bodies of water, but the land to which plaintiffs had access and also the surrounding air", this is insufficient to call into play the "sudden and accidental" exception. In the context of the single cause of action in the complaint based on a knowing discharge of toxic waste materials, the mere mention of the word "negligence" without a description, in any manner, of the nature of such negligence is insufficient to allege an "accidental" discharge of the toxins (cf., Niagara County v Utica Mut. Ins. Co., 80 AD2d 415, lv dismissed 54 NY2d 831 [complaint alleged that the nonpolluting county was negligent in failing to warn and safeguard its citizens, in failing to enforce its health regulations and in failing to remove the chemicals and the claimants from the area]). Moreover, the complaint is devoid of any allegation that the discharge of toxins was "sudden". Thus, the factual allegations in the underlying complaint clearly fall within the terms of the pollution exclusion and cannot be interpreted to be within the "sudden and accidental" exception to this exclusion.

## II

Given the present growing awareness of the problems involving the pollution of our water, land and air, cases relating to environmental pollution have increasingly demanded the attention of our courts. There has been extensive litigation throughout the country involving the same "pollution exclusion" provision contained in the comprehensive general liability policies at issue in this case. A review of the most recent cases reveals that there is an emerging nationwide judicial consensus that the "pollution exclusion" clause is unambiguous and that an insured who is accused of causing injury or property damage by the intentional discharge of pollutants over an extended period of time is bound by the terms of the exclusion and is not entitled to be defended or indemnified by its insurer.

For example, in Borden Inc. v Affiliated FM Ins. Co. (682 F Supp 927 [SD Ohio 1987]), it was determined that the "pollution exclusion" clause was unambiguous. The court held that the regular disposal of radioactive wastes as a concomitant of the manufacturing activity of the insured "is not an allegation of a 'sudden and accidental' event" as a matter of law, and granted summary judgment in favor of the defendant carrier (supra, at 930).

The issue was presented with particular clarity in *Transamerica Ins. Co. v Sunnes* (77 Ore App 136, 711 P2d 212, *review denied* 301 Ore 76, 717 P2d 631), where the parties stipulated that the insured intended to discharge the toxic materials but that the resulting property damage caused by such discharge was *not* intended by the insured. The court differentiated the "pollution exclusion" clause from the so-called "occurrence" clause and held that the insured was not entitled to a defense, as follows:

"The fact that the *damage* was not intended means that there was an 'occurrence' within the policy definition. That fact has nothing to do with whether the *discharge* was 'sudden and accidental' for the purpose of applying the exception to the exclusion. The trial court correctly ruled that, because Culligan intentionally discharged waste materials regularly over a period of many years, the discharge was not 'sudden and accidental' and so the exception did not apply * * *

"The exception to the exclusion clause is concerned only with whether the discharge or release of pollutants is accidental or intended and not with whether the resulting damage was also intended. Culligan clearly intended to discharge the pollutants, and its liability is therefore not covered by the insurance policies" *(Transamerica Ins. Co. v Sunnes,* 77 Ore App 136, 140-141, 711 P2d 212, 214, *supra).*

A number of courts have held that the "pollution exclusion" clause, in effect, is simply a restatement of the definition of the term "occurrence". We disagree. Such a strained reading of the policy would render superfluous the separate and distinct "pollution exclusion" clause. We concur with those cases which afford a logical and separate reason and meaning to the "pollution exclusion" clause.

For example, in *Great Lakes Container Corp. v National Union Fire Ins. Co.* (727 F2d 30 [1st Cir 1984]), the court, applying New Hampshire law, held that the pollution exclusion applied so as to relieve the insurance company of any duty to defend its insured. The insured was accused, in the underlying complaint, of allowing pollutants to escape through the soil of its property into the ground water. The court held *(supra,* at 33) that since such discharges were a "concomitant of its regular business activity", the exclusion applied. The court noted that the complaint in the underlying action contained no allegation that the discharges were sudden and accidental *(Great Lakes Container Corp. v National Union Fire Ins. Co., supra,* at 33).

Similarly, the parties in *International Surplus Lines Ins. Co. v Anderson Dev. Co.* (US Dist Ct, ED Mich, Oct. 9, 1987, La Plata, J.), entered into a consent decree in which it was agreed that during a nine-year period, the manufacturing processes placed hazardous substances into adjoining waterways. The court rejected the manufacturer's contention that the discharge was "sudden and accidental" because the resulting damage was "neither expected nor intended", and held: "In the instant case, it is clear from the language of exclusion (f) that damage must be both sudden and accidental to be covered. Defendant argues that 'sudden and accidental' is the equivalent of 'unexpected and unintended.' The Court disagrees. As the Court found in *American States Insurance Co. v Maryland Casualty Company,* 587 F Supp 1549 E.D. Mich. 1984), after examining language virtually identical to exclusion (f) in this case, the exclusion was intended to eliminate any doubt that may have existed concerning coverage of damages caused by the omission of pollutants as a regular or continuous part of the insured's business" *(International Surplus Lines Ins. Co. v Anderson Dev. Co., supra,* slip opn at 5; *accord, United States Fid. Guar. Co. v Star Fire Coals,* US Dist Ct, Ky, Aug. 31, 1988, Martin Wellford and Jarvis, JJ. [the "sudden and accidental" exception held inapplicable where the pollutants were discharged on a regular ongoing basis]; *American States Ins. Co. v Maryland Cas. Co.,* 587 F Supp 1549, 1553 [ED Mich 1984] [pollution exclusion clause given effect where the underlying complaint "never even suggested that the (illegal) dumping (of hazardous waste) was unintended, unexpected, sudden or by accident"]).

The holding in *Techalloy Co. v Reliance Ins. Co.* (338 Pa Super 1, 487 A2d 820) is of particular interest. In that case, the insured was charged in the underlying action with causing injury by "reckless[ly]" dumping or storing trichloroetheline, a chemical used by Techalloy in its business of cutting and stripping steel. The court affirmed the trial court's pretrial dismissal of the insured's declaratory judgment action, holding that there was no duty to defend. The court reasoned that the pollution exclusion applies unless the discharge is *both* accidental and sudden and found that the underlying complaint did not allege a sudden event. "In contrast, the allegations were directly the opposite, identifying the source of the problem as contamination which occurred on 'a regular or sporadic basis from time to time during the past 25 years' " *(Techalloy Co. v Reliance Ins. Co.,* 338 Pa Super 1, —, 487 A2d 820, 827,

*supra)*. In other words, the court in *Techalloy* concluded that the term "sudden" is different than the term "accidental", and both conditions must be established to impose coverage.

The logic of this conclusion is compelling. The word "sudden", as it is commonly used, is the opposite of "continuous", whereas "accidental" is, generally speaking, the opposite of "intentional" or "expected". Theoretically, a discharge of toxic waste could take place accidentally over an extended period of time but, under the *Techalloy* analysis, there would be no coverage since the discharge was not "sudden" *(see also, Centennial Ins. Co. v Lumbermens Mut. Cas. Co.,* 677 F Supp 342, 346-349 [ED Pa 1987])*.

In *Waste Mgt. v Peerless Ins. Co.* (315 NC 688, 340 SE2d 374), the court discussed the distinction between the terms "sudden" and "accidental" as those terms are used in the standard pollution exclusion. The court held that there was no duty to defend the insured where the underlying complaint alleged that the insured had intentionally disposed of solid wastes during the six-year period of the operation of a landfill. Of interest is the fact that the plaintiffs in the underlying action in that case also alleged that the insured was guilty of " 'negligent acts and omissions' " in hauling trash to the landfill *(Waste Mgt. v Peerless Ins. Co.,* 315 NC 688, 692, 340 SE2d 374, 378, *supra)*. The court noted that while some courts had held the terms "sudden" and "accidental" to be synonymous *(see, e.g., Lansco Inc. v Department of Envtl. Protection,* 138 NJ Super 275, 350 A2d 520, *affd* 145 NJ Super 433, 368 A2d 363, *petition for certification denied* 73 NJ 57, 372 A2d 322 [defining both terms as unintended])*, the "more logical" interpretation would be to define " 'sudden' " as meaning "an abrupt or precipitant event" *(Waste Mgt. v Peerless Ins. Co.,* 315 NC 688, 699, 340 SE2d 394, 382, *supra)*. The court held that since the underlying complaint alleged gradual contamination, the discharge was not "sudden", so that the pollution exclusion applied *(accord, Fischer & Porter Co. v Liberty Mut. Ins. Co.,* 656 F Supp 132, 140 [ED Pa 1986] [the word "sudden" in a pollution exclusion clause "signifies an event that ocurs abruptly, without warning"]; *Claussen v Aetna Cas. & Sur. Co.,* 676 F Supp 1571, 1580 [SD Ga 1987] ["(t)he word sudden was intended by the industry to have its usual temporal meaning"])*.

This issue was also presented in *American Motorists Ins. Co. v General Host Corp.* (667 F Supp 1423 [D Kan 1987]), in which the insured allegedly polluted the water in an under-

ground acquifer by carelessly operating a salt plant. It was held that the pollution exclusion was unambiguous as applied to the facts in that case. The court distinguished between the meaning of the terms "sudden" and "accidental" and stated that "[n]o use of the word 'sudden' or 'suddenly' could be consistent with an event which happened gradually or over an extended time" *(American Motorist Ins. Co. v General Host Corp.,* 667 F Supp 1423, 1428, *supra).* The court concluded that even if the insured's emission of salt could be viewed as "accidental", it was clearly not "sudden" since it occurred over several years. Therefore, the court held that the pollution exclusion was applicable and no coverage existed.

## III

A review of the cases presented by Technicon to support its position that it is entitled to a defense by the appellants reveals that they are, in the main, distinguishable.

In *A-1 Sandblasting & Steamcleaning Co. v Baiden* (53 Ore App 890, 632 P2d 1377, *affd* 293 Ore 17, 643 P2d 1260), the insured was sued by car owners for property damage which resulted from paint which was accidentally sprayed on the cars during the painting of a bridge. The court held that the term "liquid" as used in the exclusion could apply to paint, so that there was an ambiguity in the factual context of that particular case *(A-1 Sandblasting & Steamcleaning Co. v Baiden,* 53 Ore App 890, 894, 632 P2d 1377, 1379, *supra).* In addition, in *A-1 Sandblasting,* the spraying of the paint on the cars was not intended, and so the actual discharge of the material was accidental. In fact, *A-1 Sandblasting* was expressly distinguished on this ground in the later Oregon case of *Transamerica Ins. Co. v Sunnes (supra).*

In *Travelers Indem. Co. v Dingwell* (414 A2d 220 [Me 1980]), a class of plaintiffs had sued the insured alleging contamination. In a declaratory judgment action, the insured conceded that in 2 of 3 causes of action, there was no duty to defend, since those causes of action alleged intentional (as opposed to accidental) discharges or emissions. In the final cause of action, it was alleged that " 'as a result of negligence * * * products containing [toxic] chemicals permeated the ground to the ground water table * * * resulting in the contamination of water in the Plaintiffs' wells' " *(Travelers Indem. Co. v Dingwell, supra,* at 224). The court held that these allegations "do not necessarily describe a 'deliberate process' " *(Travelers*

*Indem. Co. v Dingwell, supra,* at 225) and that the spills or leaks which led to the permeation could have been caused by negligence, rather than intentionally. Thus, *Travelers Indem. Co. v Dingwell* is distinguishable because it was not clear from the complaint, at least with respect to one cause of action, whether the insured actually intended the original discharge of waste. There is no such confusion in the instant case, where there is only one cause of action in the underlying personal injury action which is based on the knowing discharge of toxic waste. The court in *Travelers Indem. Co. v Dingwell* stated: "It is possible that the releases could have been unexpected and unintended [under the allegations of the complaint], and thus outside [the insurer's] exclusion" *(supra,* at 225). This factual predicate is simply not present in the instant case.

In *New Castle County v Hartford Acc. & Indem. Co.* (673 F Supp 1359 [D Del 1987]), there was an unintentional discharge of toxics from a landfill into wells. Although the court held that the term "sudden" was ambiguous and resolved the ambiguity in favor of the insured, it nevertheless determined that "the term 'sudden' means a discharge, dispersal, release or escape of pollutants that is unexpected" *(supra,* 673 F Supp, at 1364). It held that the "sudden" or "unexpected" element had to do with the discharge of the toxic material and not to the subsequent damage which occurred from such dispersal.

Also to be distinguished are those cases in which the exclusion was held not to apply because the alleged discharge of toxic waste was, in fact, sudden and accidental. Cases of vandalism are typical. For example, it has been held that the exclusion was not applicable where vandals broke a lock and opened a valve on a storage tank, permitting the escape of 18,000 gallons of gasoline into the ground *(see, Evans v Aetna Cas. & Sur. Co.,* 107 Misc 2d 710). Also, in *Lansco, Inc. v Department of Envtl. Protection* (138 NJ Super 275, 350 A2d 520, *affd* 145 NJ Super 433, 368 A2d 363, *petition for certification denied* 73 NJ 57, 372 A2d 322, *supra)* the insurer was held to have a duty to defend its insured against a claim for injury which resulted from an act of vandalism where an unknown person opened valves at the insured's business causing the release of gasoline *(accord, United Pac. Ins. Co. v Van's Westlake Union,* 34 Wash App 708, 664 P2d 1262 [exclusion inapplicable where the gasoline leak was neither expected nor intended]).

As stated in *Claussen v Aetna Cas. & Sur. Co.* (676 F Supp 1571, 1580, *supra),* the "sudden and accidental" exception was

clearly intended to limit coverage for pollution-related damages to situations "where such damages are caused by sudden pollution incidents involving equipment malfunctions, explosions and the like * * * and a reasonable insured with any degree of common sense would assume the word [sudden] to have that usual meaning * * * [o]nly in the minds of hypercreative lawyers could the word 'sudden' be stripped of its essential temporal attributes. While not all courts have agreed in this regard, recent decisions have recognized, with increasing frequency, that the pollution exclusion does mean just what it says" *(see, e.g., Port of Portland v Water Quality Ins. Syndicate,* 796 F2d 1188 [9th Cir 1986] [pollution caused when a dredge holding 65,000 gallons of diesel oil sank at its moorings, spilling the oil into the water]).

Thus, a growing consensus of authority has established that the terms "sudden" and "accidental" should be afforded their ordinary meaning. A "sudden and accidental" event is one which is unexpected, unintended and occurs over a short period of time. This principle was most succinctly stated by Judge Edenfield in *Claussen v Aetna Cas. & Sur. Co. (supra,* at 1580, n 6), as follows: "The pollution exclusion clause is unambiguous under most circumstances * * * and it would seem that judicial determinations will be perceived as more credible when this fact is generally recognized."

## IV

There is authority in New York, however, for the proposition that the word "sudden" need not be limited to an instantaneous happening. In the case of *Allstate Ins. Co. v Klock Oil Co.* (73 AD2d 486 [4th Dept 1980]), the court held that the insurer was required to defend an action against its insured based on allegations that the insured had negligently installed and maintained a gasoline storage tank at an automobile dealership. It was alleged that gasoline leaking from the dealership's tank damaged the property of adjoining landowners. Clearly, the complaint in *Klock* alleged unintentional "accidental" discharges. However, the court held that so long as the escape of gasoline was alleged to be accidental, it could be "sudden", even though the discharge was "undetected for a substantial period of time" *(Allstate Ins Co. v Klock Oil Co., supra,* at 488). The court further held that "the word 'sudden' as used in liability insurance need not be limited to an instantaneous happening" *(supra,* at 488). *Allstate Ins. Co. v*

*Klock Oil Co.* is obviously distinguishable because there the discharges alleged in the complaint were unintentional and "accidental" while, in the instant case, the allegation in the complaint in the underlying personal injury action is that the discharges were intentional. Therefore, the pollution exclusion clause would apply to the facts in this case notwithstanding any dispute as to the definition of the word "sudden".

There is also dicta in the *Allstate Ins. Co. v Klock Oil Co.* case to the effect that "if the resulting damage could be viewed as unintended by the fact finder, the total situation could be found to constitute an accident * * * and therefore within the [policy's] coverage" *(supra,* at 489; *see also, Jackson Twp. Mun. Utils. Auth. v Hartford Acc. & Ind. Co.,* 186 NJ Super 156, 451 A2d 990 [1982]). In support of the proposition that a "discharge" may be "accidental" where the consequential damages were unintended, the *Allstate Ins. Co. v Klock Oil Co.* court relied on *McGroarty v Great Am. Ins. Co.* (36 NY2d 358). At issue in the *McGroarty* case were two different provisions in various insurance policies insuring the owner of premises against liability resulting from accidents. One provision defined the scope of coverage as applying to " 'all sums which the insured shall become legally obligated to pay as damages because of *injury to or destruction of property* including the loss of use thereof *caused by accident'* " *(McGroarty v Great Am. Ins. Co., supra,* at 362 [emphasis supplied]). The other provision covered all sums that the insured would be liable to pay " *'because of property damage* to which this section applies *caused by accident* and arising out of the ownership, maintenance and use of the premises' " *(supra,* at 362 [emphasis supplied]). Thus, *McGroarty* was concerned with the construction of the term "accident" within the context of insurance policies which covered damages "caused by accident".

In *McGroarty (supra),* the court emphasized that the meaning of these provisions was unclear so as to present a question of fact rather than law. Whether the policy language referred to the unintended consequences of intentional acts was held to be an issue of fact. The question was whether "injury caused by accident" referred to the unintended results of an intentional act *(see also, Atlantic Cement Co. v Fidelity & Cas. Co.,* 91 AD2d 412, 413 [1st Dept 1983], *affd* 63 NY2d 798 [1984] [wherein the policy exclusion at issue expressly required "intentional harms"]).

The language of the policies in this case is entirely different

from that of *McGroarty (supra)*. The pollution exclusion clause in the policies now under review unambiguously provides coverage only where damage results from *discharges* which are sudden and accidental. This exclusion in the policies in question does not refer to "injuries caused by accident" as in *McGroarty*.

The pollution exclusion does not differentiate between intended or unintended consequences of intentional discharge. Instead, it excludes from coverage liability based on *all* intentional discharges of waste materials regardless of whether the consequential damages were intended or unintended *(see, e.g., Transamerica Ins. Co. v Sunnes,* 77 Ore App 136, 711 P2d 212, *review denied* 301 Ore 76, 717 P2d 631, *supra)*. Therefore, if the discharge was intentional, there is no coverage, regardless of the nature of the ultimate resulting damage.

Another New York case advanced by Technicon is *Farm Family Mut. Ins. Co. v Bagley* (64 AD2d 1014 [4th Dept 1978], *appeal dismissed* 46 NY2d 940 [1979]), in which the insured had sprayed his farm with chemicals and was later sued by a neighbor who alleged that his property was damaged. The insurer argued that since the spraying was clearly intentional, there was no coverage and no duty to defend. The court held that although the original discharge of the chemical from the plant was intentional, the *dispersal* of the chemical agents through the air and into the neighboring property could be viewed as "accidental". Thus, the court held that an ambiguity existed, and a plenary trial was necessary on the question of coverage.

Under the *Farm Family Mut. Ins. Co. v Bagley* theory, there would always be potential coverage and, hence, a duty to defend even where the insured is shown to have deliberately and repeatedly polluted the land, water or air over a long period of time, merely because it cannot be known where the toxic substance will flow or what damage will ultimately result. The analysis in that case would, in effect, completely nullify the clear and express language of the "sudden and accidental" exception to the pollution exclusion, and we cannot adhere to such a theory.

Technicon's contention that an intentional discharge of pollutants over a course of years may be deemed to be "sudden and accidental" would, in essence, require this court to contort the plain and clear language in the policy and rewrite the "pollution exclusion" clause so as to provide coverage for

unintended injuries or damages claimed to have resulted from the deliberate long-term emission of toxic substances. This we cannot do in view of the clear and unambiguous exclusion set forth in the policy. Particularly appropriate is the rule of law in the interpretation of insurance policies that "[t]his court may not make or vary the contract of insurance to accomplish its notions of abstract justice or moral obligation, since '[e]quitable considerations will not allow an extension of the coverage beyond its fair intent and meaning' " *(Breed v Insurance Co.,* 46 NY2d 351, 355, quoting from *Weinberg & Holman v Providence Wash. Ins. Co.,* 254 NY 387, 391; *see also,* 1 Couch, Insurance § 184, at 376). Further, "[e]very clause or word is deemed to have some meaning" *(Theatre Guild Prods. v Insurance Corp.,* 25 AD2d 109, 111, *affd* 19 NY2d 656), and "a policy's terms should not be assumed to be superfluous or to have been idly inserted" *(Bretton v Mutual of Omaha Ins. Co.,* 110 AD2d 46, 50, *affd* 66 NY2d 1020).

In view of our determination that an intentional discharge will trigger the pollution exclusion regardless of whether the ultimate damages were unintended, we decline to follow the rule enunciated in *Farm Family Mut. Ins. Co. v Bagley (supra),* or the dicta set forth in *Allstate Ins. Co. v Klock Oil Co. (supra).* In this regard, we also note that these two cases were decided in 1978 and 1980, relatively early in the history of "pollution exclusion" litigation and prior to a number of Federal and State decisions which expressly hold that the "sudden and accidental" exception refers to accidental discharges and not accidental consequences.

In particular, a number of very recent cases expressly declined to adopt the rule enunciated in *Farm Family Mut. Ins. Co. v Bagley (supra)* and *Allstate Ins. Co. v Klock Oil Co. (supra).* For example, in *International Mins. & Chem. Corp. v Liberty Mut. Ins. Co.* (168 Ill App 3d 361, 522 NE2d 758 [1988]), the complaint alleged that International Minerals Chemical Corp. discharged toxic wastes into the ground and water as part of its normal business operation. The Illinois appellate court determined that the "pollution exclusion" clause is unambiguous and precludes coverage since the discharge was not "sudden and accidental" as a matter of law, even though the resulting damage was an "occurrence" within the terms of the policy. In so ruling, the court declined to follow an earlier ruling by the same Illinois appellate court *(Reliance Ins. Co. v Martin,* 126 Ill App 3d 94, 467 NE2d 287), which had expressly relied upon the reasoning in *Allstate Ins.*

*Co. v Klock Oil Co. (supra)* that the word "sudden" need not be limited to an instantaneous happening.

The court in *International Mins.* offered the following compelling analysis:

"In our view, this reasoning is seriously flawed for at least two reasons. First, interpreting 'sudden' as 'unintended and unexpected' renders it synonymous with 'accidental,' as that term is employed in the policy and thus, the word 'accidental' can be read out of the exception as nothing more than redundant surplusage. Such a reading does not comport with fundamental rules of contract construction requiring that to the extent possible, all words used in a contract be given effect * * *

"Second, we believe * * * that 'sudden' is understood in its ordinary, most common and popular sense, to have a temporal significance. Webster's dictionary defines 'sudden' as 'happening without previous notice or with very brief notice'; 'abrupt'; 'characterized by and manifesting hastiness'; (Webster's Third New International Dictionary, 2284 (1976)); and we decline to ignore these temporal-focused definitions or hold that because the word might also have other contextual uses, it is ambiguous and thus must be interpreted to provide coverage where the policy language read as a whole clearly intends to exclude such coverage" *(International Mins. & Chem. Corp. v Liberty Mut. Ins. Co.,* 168 Ill App 3d 361, —, 522 NE2d 758, 769, *supra).*

Accordingly, the Illinois appellate court "respectfully but unhesitatingly" declined to follow the cases of *Reliance Ins. Co. v Martin,* 126 Ill App 3d 94, 467 NE2d 287, *supra)* and *Allstate Ins. Co. v Klock Oil Co.* (73 AD2d 486, *supra).*

## V

Beginning in 1971 and during the periods Technicon acquired the comprehensive general liability policies at issue, the State of New York required liability carriers to insert a "pollution exclusion" clause in all such policies containing the "sudden and accidental" exception *(see,* former Insurance Law § 46). The rationale for this requirement was set forth in the Governor's memorandum, as follows:

"The purpose of the bill is to prohibit commercial or industrial enterprises from buying insurance to protect themselves against liabilities arising out of their pollution of the environment * * *

"New York State has adopted stringent standards to prohibit despoiling the environment through the discharge of noxious substances into the water and air. These standards, which are the most comprehensive in the Nation, go far beyond merely strengthening and supplementing the common law rules against pollution.

"As strict as these laws are, however, their effectiveness could be substantially reduced if polluters were able to purchase insurance to protect themselves from having to pay the fines and other liabilities that may be imposed upon them for polluting * * *

"Many insurance companies have voluntarily initiated action to protect the environment by refusing to insure against liability arising out of environment[al] pollution.

"The bill will help to assure that corporate polluters bear the full burden of their own actions spoiling the environment, and would preclude any insurance company from undermining public policy by offering this type of insurance protection" (1971 NY Legis Ann, at 353-354).

In 1982, subsequent to the issuance of the policies at bar, the New York Legislature repealed that portion of the statute requiring inclusion of the pollution exclusion (see, Insurance Law § 1113). The Governor's memorandum approving the enactment of the chapters containing the repeal states: "As we increasingly rely on the private sector to treat, store and dispose of hazardous wastes in a safe and environmentally sound manner, we must insure that the public health is safeguarded from the adverse consequences of failures and accidents for which insufficient funds are available to remedy * * * [B]y authorizing insurance companies to write such policies, the bills will provide the protection necessary in the event that a permit holder goes out of business or is financially disabled at the time of an accident which requires remedial activity or causes damages to third parties * * * The bills represent a major step in our comprehensive effort to encourage industry responsibly to handle its hazardous wastes and eliminate the attendant risks, and simultaneously to safeguard the public from the adverse consequences of hazardous waste handlers which become financially disabled" (1982 NY Legis Ann, at 272).

Although the requirement to insert a pollution exclusion clause in the comprehensive general liability policies was no longer present after 1982, liability carriers were not compelled

by law to afford coverage for liability evolving from the intentional, long-ongoing discharge of pollutants.

These memoranda reflect two legitimate competing public policy concerns—the need to protect the environment and the need to provide financial compensation for persons who have suffered damages caused by pollution. To the extent that the Insurance Law now permits the issuance of policies indemnifying for intentional pollution, the latter policy concern has been afforded recognition. However, the issuance of such insurance policies is not mandatory; and, clearly, the State of New York has not abandoned its concern with protecting the environment from intentional polluters.

The rationale for the pollution exclusion is, in part, to deter deliberate pollution by withholding the shelter of liability insurance for injuries resulting from such conduct. There is authority for the proposition that the insured should not " 'seek protection from his liability insurer if he knowingly pollute[d]' " the environment (Soderstrom, *The Role of Insurance in Environmental Litigation*, 11 Forum 762, 768 [1976]; *see also, Niagara County v Utica Mut. Ins. Co.,* 80 AD2d 415, 418 [4th Dept 1981]; Adler and Broiles, *The Pollution Exclusion: Implementing the Social Policy of Preventing Pollution Through the Insurance Policy,* 19 Loy LA L Rev 1251, 1253 [1986]; Note, *The Pollution Exclusion in the Comprehensive General Liability Insurance Policy,* 1986 U Ill L Rev 897).

Indeed, the importance of deterring deliberate polluters was recently recognized in *EAD Metallurgical v Aetna Cas. & Sur. Co.* (US Dist Ct, WD NY, July 13, 1988), which involved the disposal of waste material over a long period of time in the regular course of the insured's business activities. The court held that such disposals were neither "sudden" nor "accidental", and stated: "Moreover, to find that EAD under these circumstances falls outside the pollution exclusion would be to render such exclusion almost entirely meaningless, thereby flouting New York's strong policy of encouraging a clean environment by eliminating 'subsidized pollution' ".

Thus, the provision of the Insurance Law prohibiting coverage for intentional pollution which was in effect at the time Technicon purchased the policies now under review supports our conclusion that long-term intentional discharge of pollutants is not covered by the policies at issue.

## VI

In sum, we agree with the substantial weight of authority

which has construed the pollution exclusion by the ordinary meaning of its terms, resulting in a general rule that no duty to defend exists unless the underlying action is based on both a sudden and accidental discharge of waste materials. In our view, the logical and proper application of the pollution exclusion depends solely upon the method by which the pollutants entered the environment *(see, Jonesville Prods. v Transamerica Ins. Group,* 156 Mich App 508, 512, 402 NW2d 46, 48 ["The pollution exclusion focuses on the *release* of pollutants"]). The relevant factor is not whether the policyholders anticipated or intended the resultant injury or damage, but whether the toxic material was discharged into the environment unexpectedly and unintentionally or knowingly and intentionally.

In the present case, there was no allegation of a sudden or accidental discharge in the underlying complaint. Indeed, the exact opposite is true in that the complaint alleged a long-standing, continuous and intentional discharge of toxins. We find that the factual allegations in the complaint stating that there was a knowing discharge of toxic wastes into Frontera Creek and other bodies of water during several years cannot, as a matter of law, be considered a "sudden and accidental" discharge of toxic wastes. Thus, there are no triable issues as to the intended nature of the discharge, and summary judgment is appropriate. The accidental or unintended nature of the damage which might ensue from the intentional discharge of hazardous waste is immaterial; the exclusion is applicable unless the actual emission was both sudden and accidental.

This is one of the rare cases in which the appellants have established "that the allegations of the underlying complaint place that pleading solely and entirely within exclusions of the policy and that the allegations are subject to no other interpretation" *(Baron v Home Ins. Co.,* 112 AD2d 391, 392). Moreover, in determining whether or not to grant summary judgment, we may and do consider the judicial admission contained in Technicon's answer in the underlying personal injury action, in which it concedes that the discharges of toxic material at issue were intentional *(see,* Fisch, New York Evidence, §§ 803, 804 [2d ed]; Richardson, Evidence, §§ 216, 217 [Prince 10th ed]). Since there is no conceivable duty to indemnify, there is no duty to defend. Therefore, the pollution exclusion applies to the factual situation presented in the underlying personal injury action.

THE ENVIRONMENTAL PROTECTION AGENCY MATTER

We also determine that the appellants should not have been directed to furnish a "defense" to Technicon with respect to the investigation being conducted by the EPA. First, the basis for this administrative matter is apparently the same as the basis for the underlying personal injury action, i.e., Technicon's intentional discharge of hazardous wastes over several years so that the pollution exclusion applies to the EPA matter as well.

Second, although it is unsettled whether any costs which might be incurred by the Federal Government and then recouped from Technicon in connection with the cleanup of the allegedly polluted site (see, Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 USC § 9601 et seq. [hereinafter CERCLA]), would constitute damages based on the "destruction of tangible property" so as to be covered by the subject policies, we need not decide this question under the facts of this case (see, Continental Ins. Co. v Northeastern Pharm. & Chem. Co., 842 F2d 977 [8th Cir 1988], on reh amdg decision at 811 F2d 1180 [8th Cir 1987]; Maryland Cas. Co. v Armco, Inc., 822 F2d 1348 [4th Cir 1987]; Protective Natl. Ins. Co. v Union Oil Co., Cal Super Ct, Nov. 29, 1987, Markey, J.; Mraz v Canadian Universal Ins. Co., 804 F2d 1325 [4th Cir 1986]; cf., Continental Ins. Cos. v Northeastern Pharm. & Chem. Co., 811 F2d 1180 [8th Cir 1987], supra; Broadwell Realty Servs. v Fidelity & Cas. Co., 218 NJ Super 516, 528 A2d 76; Fireman's Fund Ins. Cos. v Ex-Cell-O Corp., 662 F Supp 71 [ED Mich 1987]).

Assuming that such costs would constitute damages within the purview of the comprehensive general liability policies, we find that the "potentially responsible person" letter sent by the EPA to Technicon on March 1, 1985, does not constitute the institution of a "suit" to recover such damages as that term is used in the subject policies so as to require a defense (see, City of Evart v Home Ins. Co., Mich Ct App, Aug. 5, 1987, Smyk, J.; County of Broome v Aetna Cas. Co., Sup Ct, Broome County, Feb. 11, 1988, Root, J.]; cf., Fireman's Fund Ins. Cos. v Ex-Cell-O Corp., supra).

In the comprehensive general liability policies at issue, the defense obligation is limited to the defense of "any suit" against the insured seeking damages on account of bodily injury or property damage. In City of Evart v Home Ins. Co. (supra) the court held that a Michigan Department of Natural

Resource letter, similar in content and nature to the EPA letter in this case, did not commence a "suit" which the carrier must defend. The court held that the requirement of a suit was "clear and unambiguous" and that the duty to defend extended only to "suits, not allegations, accusations or mere claims which have not been embodied in a suit".

In *Detrex Chem. Indus. v Employers Ins.* (681 F Supp 438 [ND Ohio 1987]), at issue were several letters received by the insured from the EPA accusing the insured of discharging effluent into a waterway, including a letter similar to the the one at issue and additional letters from the EPA with regard to subsequent investigation and studies. The court held that the environmental matter had not reached the "suit" stage, stating: "Merely because the PRP letters to Detrex informed it that it might be liable for cleanup costs, penalties and punitive damages under CERCLA, does not mean that these letters meet the attributes of a 'suit'. Until, pursuant to Section 9606, the EPA resorts to a court injunction or to a mandatory court order to enforce a section 9606 (a) administrative order, or pursuant to section 9607 the EPA, in district court, seeks cleanup costs, a 'suit' would not be brought against Detrex that would trigger Wausau's duty to defend" (681 F Supp 438, 446, *supra*).

The EPA letter at issue merely informed Technicon of its potential liability under CERCLA and that the EPA was interested in discussing Technicon's voluntary participation in remedial measures. The letter was an invitation to voluntary action on Technicon's part and is not the equivalent of the commencement of a formal proceeding within the meaning of the subject comprehensive general liability policies.

In view of our determination that the appellants have no duty to defend or indemnify Technicon either with regard to the underlying personal injury action or the EPA investigation on the ground that the pollution exclusion clause in the policies is applicable, as a matter of law, we need not address the remaining issues raised by the appellants.

Accordingly, the order and judgment appealed from should be reversed, the plaintiff's motion for partial summary judgment should be denied, and the appellants' cross motion for summary judgment by the appellants declaring that they have no obligation to defend or indemnify Technicon with regard to the underlying action in Puerto Rico or in connection with the related EPA investigation should be granted.

KUNZEMAN, J. P., KOOPER and SULLIVAN, JJ., concur.

Ordered that the order and judgment is reversed, on the law, with costs, the plaintiff's motion for partial summary judgment is denied; the motion by the appellants for summary judgment is granted, and it is declared that the appellants have no obligation to defend or indemnify the plaintiff in connection with the action entitled *Carmen Vellon Maldonado et al. v Squibb Manufacturing Enterprises, Inc.* pending in the Superior Court of Puerto Rico, Humacao Part, Civil No. CS 85-248, or in connection with any related matter pending before the United States Environmental Protection Agency.