BORG-WARNER CORPORATION, Appellant, v INSURANCE COMPANY OF NORTH AMERICA et al., Respondents, et al., Defendants.

Third Department, January 9, 1992

## APPEARANCES OF COUNSEL

*Anderson Kill Olick & Oshinsky (Jerold Oshinsky* of counsel), for appellant.

*Wilson, Elser, Moskowitz, Edelman & Dicker (Carl J. Pernicone* and *Robert L. Joyce* of counsel), for Royal Indemnity Company, respondent.

*Carter, Conboy, Bardwell, Case, Blackmore & Napierski*

*(John T. Maloney* of counsel), for Continental Insurance Company, respondent.

*MacKenzie Smith Lewis Michel & Hughes (Stephen T. Helmer* of counsel), for Aetna Casualty and Surety Company, respondent.

*Mudge, Rose, Guthrie, Alexander & Ferdon (Paul R. Koepff* of counsel), for Insurance Company of North America, respondent.

*Ford, Marrin, Esposito & Witmeyer (Charles Booth* of counsel), for Continental Casualty Company and another, respondent.

*Newman & Bower, P. C. (Thomas R. Newman* and *Martin P. Lavelle* of counsel), and *Wiley Rein & Fielding (Thomas W. Brunner* and *Lon A. Berk* of counsel), for Insurance Environmental Litigation Association, *amicus curiae.*

**OPINION OF THE COURT**

Mercure, J.

Plaintiff commenced this action seeking a declaration that certain insurers are obligated under various comprehensive general liability (hereinafter CGL) insurance policies to defend and indemnify plaintiff against underlying claims arising out of its disposal of hazardous industrial waste at 19 sites across the country. Disposal of waste at these sites occurred over periods ranging from two years to four decades. In most instances, plaintiff arranged to have its industrial waste transported off its property to landfill sites. On the basis of this course of conduct, plaintiff has been named as a defendant in several civil actions which seek damages and cleanup costs associated with plaintiff's discharge of toxic waste. In one case involving the Morse Chain Development plant in Tompkins County, toxic chemicals leached into the soil and groundwater directly from the manufacturing facility owned and operated by plaintiff itself. After purchasing the Morse site and discovering the toxic chemicals, Emerson Electric Company commenced an action, *Emerson Elec. Co. v Borg-Warner Corp.* (hereinafter *Emerson I),* against plaintiff, claiming breach of contract and fraud. In addition, several governmental administrative actions pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (42 USC § 9601 *et seq.)* seek plaintiff's voluntary participation in cleanup activities and provide notice that, absent voluntary

action, plaintiff may be required to reimburse the United States for the cost of cleaning up waste that it generated.

After issue was joined, plaintiff moved for an order granting partial summary judgment against the primary insurance carrier defendants, Continental Casualty Company (hereinafter CNA), Royal Indemnity Company (hereinafter Royal), Aetna Casualty & Surety Company (hereinafter Aetna), Continental Insurance Company (hereinafter Continental) and Insurance Company of North America (hereinafter INA). Defendants opposed the motion and cross-moved for summary judgment dismissing plaintiff's complaint and declaring that they had no duty to defend plaintiff. Plaintiff thereafter moved for an order allowing it to supplement its second amended complaint to add an action filed in March 1990, *Emerson Power Transmission v Borg-Warner Corp.* (hereinafter *Emerson II*).

Supreme Court, in a thorough and well-reasoned decision, denied plaintiff's motion for partial summary judgment in all respects except as to Royal, whom it ordered to defend plaintiff in the judicial action *Newman v Stringfellow,* granted defendants' cross motions for summary judgment, except that part of Royal's cross motion pertaining to the *Newman v Stringfellow* action and, except as otherwise provided, declared that defendants had no duty to defend or indemnify plaintiff and dismissed plaintiff's second amended complaint with prejudice. Plaintiff appeals.

I

■ Initially, we reject plaintiff's argument that we should apply Illinois law to the substantive issues of this insurance coverage dispute. A number of facts, including (1) the presence of 7 of the 19 contaminated landfill sites in New York, with the balance of the sites being scattered throughout the country, (2) New York's unique policy-based interest in the pollution exclusion clause *(see,* former Insurance Law § 46 [13], [14]; *Technicon Elecs. Corp. v American Home Assur. Co.,* 141 AD2d 124, 141-143, *affd* 74 NY2d 66), a significant issue in the matter at bar, and (3) plaintiff's choice of New York as the forum for this action, amply demonstrate New York's paramount interest in the litigation *(see, Intercontinental Planning v Daystrom, Inc.,* 24 NY2d 372, 382; *Auten v Auten,* 308 NY 155, 160-161; *Colonial Penn Ins. Co. v Minkoff,* 40 AD2d 819, *affd* 33 NY2d 542; Restatement [Second] of Conflict of Laws §§ 6, 188 [1]). It is also worth noting that plaintiff relies

primarily on New York authority to support its coverage arguments. Add to the foregoing the fact that the Illinois courts are divided as to the proper construction and application of the pollution exclusion clause *(compare, International Mins. & Chem. Corp. v Liberty Mut. Ins. Co.,* 168 Ill App 3d 361, 522 NE2d 758, *lv denied* 122 Ill 2d 576, 530 NE2d 246, *with United States Fid. & Guar. Co. v Specialty Coatings Co.,* 180 Ill App 3d 378, 535 NE2d 1071, *lv denied* 127 Ill 2d 643, 545 NE2d 133), requiring "New York courts * * * as a matter of substantive interpretation [to] presume that the unsettled common law of [Illinois] would resemble New York's" *(Rogers v Grimaldi,* 875 F2d 994, 1003), and it is apparent that New York's substantive law should govern.

## II

The policies of Aetna and CNA with plaintiff contain a pollution exclusion which excludes, with minor variations: "personal injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants * * * into or upon land, the atmosphere or any watercourse or body of water, *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental"* (emphasis supplied). Aetna and CNA argue that plaintiff's alleged conduct in each of the underlying actions is analogous to that held to come within an essentially identical pollution exclusion by the Court of Appeals in *Technicon Elecs. Corp. v American Home Assur. Co.* (74 NY2d 66, *supra).* Plaintiff argues, relying upon a line of cases from this court *(see, e.g., State of New York v Aetna Cas. & Sur. Co.,* 155 AD2d 740; *Colonie Motors v Hartford Acc. & Indem. Co.,* 145 AD2d 180), that the mere act of sending waste to a landfill intended to accept it is not an undisputed knowing and intentional discharge of pollutants into the environment and, thus, the partial pollution exclusion does not preclude a defense as a matter of law.

■ We hold that the liability arising out of the long-term, intentional disposal of plaintiff's industrial waste was not covered under the "sudden and accidental" exception to the pollution exclusion. Because the exception is expressed in the conjunctive, it is now unmistakably clear that its application consists of two distinct inquiries, each of which must be satisfied independently as a prerequisite to coverage *(Techni-*

*con Elecs. Corp. v American Home Assur. Co., supra,* at 75; *see, Powers Chemco v Federal Ins. Co.,* 74 NY2d 910, 911). Thus, *"discharges that are either nonsudden or nonaccidental* block the exception from nullifying the pollution exclusion" *(Technicon Elecs. Corp. v American Home Assur. Co., supra,* at 75 [emphasis supplied]). Further, although an insurer generally must prove the applicability of an exclusion, it is the insured's burden to establish the existence of coverage *(see, e.g., Munzer v St. Paul Fire & Mar. Ins. Co.,* 145 AD2d 193, 199). Here, because the existence of coverage depends entirely on the applicability of the exception to the exclusion, the insured has the duty of demonstrating that it has been satisfied *(see, Northern Ins. Co. v Aardvark Assocs.,* 942 F2d 189, 195 [3d Cir]; *FL Aerospace v Aetna Cas. & Sur. Co.,* 897 F2d 214, 219 [6th Cir], *cert denied* — US —, 111 S Ct 284).

■ While the Court of Appeals has never expressly addressed the meaning of "sudden", its analysis in both *Technicon Elecs. Corp. (supra)* and *Powers Chemco (supra)* leads to the inescapable conclusion that the inquiry focuses upon the temporal nature of the activity. By acknowledging that "sudden" and "accidental" are independent requirements, the court necessarily rejected the argument urged by plaintiff here that "sudden" simply means "unexpected" and is therefore synonymous with accidental. Only by allowing "sudden" to retain its temporal aspect does the term attain independent significance. Thus, for a release or discharge to be "sudden" within the meaning of the pollution exclusion, it must occur abruptly or quickly or "over a short period of time" *(Technicon Elecs. Corp. v American Home Assur. Co.,* 141 AD2d 124, 137, *supra; see, Ogden Corp. v Travelers Indem. Co.,* 924 F2d 39, 41-42 [2d Cir]; *Town of Moreau v Orkin Exterminating Co.,* 165 AD2d 415, 419; *County of Broome v Aetna Cas. & Sur. Co.,* 146 AD2d 337, 342, *lv denied* 74 NY2d 614; *see also, Lumbermens Mut. Cas. Co. v Belleville Indus.,* 407 Mass 675, 680, 555 NE2d 568, 572; *Waste Mgt. v Peerless Ins. Co.,* 315 NC 688, 699, 340 SE2d 374, 382; Note, *Pollution Exclusion Clauses: The Agony, The Ecstasy and The Irony for Insurance Companies,* 17 N Ky L Rev 443, 458-465). The record demonstrates that the discharges alleged in the underlying proceedings occurred over long periods of time and do not even remotely qualify as sudden. Indeed, it is undisputed that the discharges took place over a period of many years at each of the relevant sites.

■ Although our conclusion that all of the discharges were

"nonsudden" is independently dispositive *(see, Technicon Elecs. Corp. v American Home Assur. Co.,* 74 NY2d 66, 75, *supra),* were we to reach the question of the applicability of the "accidental" prong the result would be the same. Plaintiff concedes that its waste was intentionally deposited at landfills but contends that the discharges were nonetheless "accidental" within the meaning of the policies because it did not expect the alleged pollution. We reject plaintiff's argument. First, it is simply irrelevant whether plaintiff knew or intended that its waste would damage the environment. The Court of Appeals has held that "the pollution exclusion clause, by its own terms, does not distinguish between intended or unintended consequences of intentional discharges; rather, it excludes from coverage liability based on all *intentional* discharges of waste whether consequential damages were intended or unintended" *(supra,* at 75 [emphasis in original]). Where, as here, the discharge itself was intentional, coverage is unavailable as a matter of law. Second, it is of no significance that, for most of the sites, plaintiff arranged to have its waste dumped into a landfill by an independent transporter. The plain language of the pollution exclusion precludes coverage for the insured's liability arising out of "the" (not "its") discharge of pollutants *(see, Powers Chemco v Federal Ins. Co.,* 74 NY2d 910, 911, *supra).*

Moreover, the Third Department decisions upon which plaintiff relies do not support its position. In the two decisions of this court that actually involved landfills, we found that the pollution exclusion was applicable, in part because discharge had occurred "over a long period of time" *(Town of Moreau v Orkin Exterminating Co.,* 165 AD2d 415, 419, *supra)* or "continued for a substantial period of time" *(County of Broome v Aetna Cas. & Sur. Co.,* 146 AD2d 337, 342, *supra).* The other cases cited by plaintiff are *Munzer v St. Paul Fire & Mar. Ins. Co.* (145 AD2d 193, *supra), Colonie Motors v Hartford Acc. & Indem. Co.* (145 AD2d 180, *supra)* and *State of New York v Aetna Cas. & Sur. Co.* (155 AD2d 740, *supra).* In *Munzer,* the court merely held that it lacked sufficient information to apply the exclusion. Both *Colonie Motors* and *Aetna Cas.* involved leakages from underground storage tanks or pipes. Far from disregarding the "sudden" prong of the exception, in each case this court held that it could not exclude the possibility that the crack that precipitated the leak had been abrupt, but had remained undetected for a lengthy period of time. Simply put, neither *Colonie Motors* nor *Aetna Cas.* has any

relevance to the facts presented here, where waste was deliberately discharged by plaintiff in the regular course of its business over many years.

### III

■ ■ Continental's policies, in addition to excepting "accidental" discharges of pollutants from the pollution exclusion, contained a second clause excepting discharges "which [are] *neither intended nor expected*" (emphasis supplied).[1] Supreme Court noted that because "an occurrence, by definition, must be an event resulting in injuries or damages that are unexpected and unintended, all occurrences involving the discharge of toxic wastes would be excepted from the exclusion under this second clause", thus making the pollution exclusion "nothing more than redundant surplusage". Supreme Court, therefore, chose to read the second clause out of the exclusion rather than reading the exclusion out of the policy, construed the second clause to be a clarification that only unexpected and unintended discharges are excepted from the exclusion, and found that the only effective exception to the pollution exclusion is for accidental discharges. We agree with Supreme Court's analysis.

It is well settled that exclusions are generally construed narrowly and exceptions to exclusions are generally construed broadly to find coverage *(see, e.g., Thomas J. Lipton, Inc. v Liberty Mut. Ins. Co.,* 34 NY2d 356, 361). In the instant case, however, New York's strong policy against allowing commercial or industrial enterprises to pollute the environment and escape the responsibility for the entire cost of cleanup by purchasing insurance *(see,* Governor's mem, 1971 NY Legis Ann, at 353-354; Governor's mem, 1971 McKinney's Session Laws of NY, at 2633)[2] and basic principles of contract construction *(see, Rhinebeck Bicycle Shop v Sterling Ins. Co.,* 151 AD2d 122, 126; *Standard Sur. & Cas. Co. v Maryland Cas. Co.,* 281 App Div 446, 450) support Supreme Court's determination. Clearly, the clause can be an effective exception to the exclusion only if it is less inclusive than the exclusion itself.

---

■ 1. Plaintiff's contention that the effective date of the endorsement containing the pollution exclusion was subsequent to the effective date of the underlying policy was not raised before Supreme Court and is thus not properly before this court *(see, Gunzburg v Gunzburg,* 152 AD2d 537, 538).

2. The Legislature made a pollution exclusion mandatory from September 1, 1971 to September 1, 1982 *(see,* L 1971, ch 765; L 1982, ch 856).

## IV

The policies issued by Royal, in effect from September 1, 1958 to September 1, 1969, contain no pollution exclusion but do restrict coverage to events constituting an "occurrence", defined as "an event or continuous or repeated exposure to conditions, which *unexpectedly* cause injury or damage during the policy period" (emphasis supplied). Plaintiff demanded coverage from Royal in connection with proceedings concerning the Stringfellow (California) and Morse sites, which gave rise to judicial actions, and the York Oil (Franklin County), American Chemical Services (hereinafter ACS) (Indiana), Brio (Texas) and Morgantown (West Virginia) sites, which were the subject of "PRP" (potentially responsible person) letters from the Federal Environmental Protection Agency.

■ We begin our analysis with a consideration of the judicial proceedings concerning the Stringfellow site. Applying an objective standard to the definition of "occurrence", and determining that damages are *expected* if the insured knew or should have known that they were substantially probable *(see, e.g., Town of Moreau v Orkin Exterminating Co.,* 165 AD2d 415, *supra; County of Broome v Aetna Cas. & Sur. Co.,* 146 AD2d 337, *supra),* Supreme Court held that, except for the *Newman v Stringfellow* action, Royal's policies did not cover plaintiff. We agree with Supreme Court's conclusion concerning *Newman v Stringfellow.* Because, as found by Supreme Court, the Stringfellow acid pits "were believed to be sufficiently impervious to prevent the dispersal of wastes beyond the site itself", a factual issue exists as to whether the unexpected migration of toxins constitutes an "occurrence" under the policy. We are, however, unable to make a meaningful distinction in this regard between *Newman* and the related action of *United States v Stringfellow,* which also involves allegations of property damage beyond the site, including alleged contamination of groundwater and endangerment of public health. Indeed, it is alleged that "toxic wastes overflowed the concrete barrier dam * * * flowed through the community of Glen Avon and into the Santa Ana River". Accordingly, the factors that led Supreme Court to conclude that the allegations in *Newman* arguably come within the definition of an occurrence are equally applicable to *United States v Stringfellow.*

■ We now turn to the judicial actions involving the Morse site. In connection with the 1972 sale of the Morse facility to

Emerson, plaintiff agreed, *inter alia,* to indemnify Emerson for all losses arising out of plaintiff's breach of the representation that the facility complied with all environmental standards established by law. In 1987, following the discovery of trichlorethylene (hereinafter TCE) in one of the underground reservoirs on the site, *Emerson I* was commenced. The gravamen of the complaint is that plaintiff fraudulently misrepresented the condition of the reservoir at the time it sold the Morse facility to Emerson. In our view, Supreme Court correctly held that there is no coverage for *Emerson I* because Emerson seeks contract damages arising out of the condition of the property and punitive damages or partial rescission of the purchase agreement based on plaintiff's alleged fraudulent representations. These types of damages are not covered by Royal's CGL policies *(see, Brooklyn Law School v Aetna Cas. & Sur. Co.,* 849 F2d 788 [2d Cir]; *Continental Ins. Co. v Colangione,* 94 AD2d 916, 917; *Parkset Plumbing & Heating Corp. v Reliance Ins. Co.,* 87 AD2d 646, 647). Moreover, Supreme Court properly denied plaintiff's motion to add *Emerson II* (which seeks damages for cleanup costs) to its second amended complaint because the action was based on plaintiff's acts of intentional pollution, specifically the continued discharge of TCE into the environment after it became aware of such discharge in 1972.

■ Assuming, without deciding, that the administrative proceedings involving the York Oil, ACS, Brio and Morgantown sites alleged occurrences during one or more of the policy periods, it is our view that Royal owed no duty to provide a defense because these proceedings do not constitute suits within the meaning of Royal's policies. In *Avondale Indus. v Travelers Indem. Co.* (887 F2d 1200, 1206, *cert denied* — US —, 110 S Ct 2588), the Second Circuit held that an administrative letter is the functional equivalent of a suit if it goes beyond asking for voluntary participation and negotiation to demand that the insured take action or face actual lawsuits and possible sanctions. In *Ryan v Royal Ins. Co.* (916 F2d 731, 735-736, 741), the First Circuit refused to accord talismanic significance to the word "suit" and ruled that an administrative action is a "suit" if government action is probable and imminent *(see, Madawick Contr. Co. v Travelers Ins. Co.,* 307 NY 111, 119). We agree with and adopt the approach taken by the courts in *Avondale Indus.* and *Ryan (see, Technicon Elecs. Corp. v American Home Assur. Co.,* 141 AD2d 124, 145-146, *supra; Patrons Oxford Mut. Ins. Co. v*

*Marois,* 573 A2d 16, 18 [Me]). Examining the relevant administrative letters in light of the foregoing considerations, and weighing the relative "coerciveness" or "adversariness" of the government's posture and the "gravity of imminent consequences" *(Ryan v Royal Ins. Co., supra,* at 741), we conclude that they are not the equivalent of suits because they seek only voluntary participation and negotiation and do not threaten litigation.

V

INA's policies, issued from January 1, 1951 to September 1, 1958, provided accident-based coverage and did not contain a pollution exclusion. Plaintiff demands coverage from INA in connection with property damage at the Morse and York Oil sites. The policies provide coverage for "damages because of injury to or destruction of property * * * caused by accident". Supreme Court excluded coverage for the liability alleged in the underlying actions on the basis of *Powers Chemco v Federal Ins. Co.* (74 NY2d 910, 911, *supra),* which held that pollution "resulting from purposeful conduct, cannot be considered 'accidental' ". Plaintiff argues that Supreme Court misconstrued the term accidental in the INA policies and claims that any unintended or unexpected damage qualifies as an accident.

 We agree with Supreme Court's determination that INA did not have a duty to defend plaintiff in these two underlying actions. First, it is well settled that there is no coverage unless the property damage is alleged to have occurred during the policy period *(see, Berger Bros. Elec. Motors v New Amsterdam Cas. Co.,* 293 NY 523; *Greenlee v Sherman,* 142 AD2d 472, 476-477). Here, the damages alleged at the Morse and York Oil sites occurred in the 1970's, long after INA's policies expired. Second, even if this were not the case, we agree with Supreme Court that because the damages alleged in the underlying complaints resulted from intentional, purposeful acts, they cannot be considered accidental *(see, Powers Chemco v Federal Ins. Co., supra).* Third, it is our view that "only sudden discharges of pollutants, referable to a fixed time, [fall] within the accident-based policy's coverage" (Note, *The Pollution Exclusion Through the Looking Glass,* 74 Geo LJ 1237, 1241-1242; *see, Johnson Corp. v Indemnity Ins. Co.,* 6 AD2d 97, 100, *affd* 7 NY2d 222 ["accident, according to generally accepted definitions, is a sudden, fortuitous mischance"]).

We have considered the remaining arguments of the parties and find them meritless or academic.

WEISS, J. P., MIKOLL, YESAWICH JR. and LEVINE, JJ., concur.

Ordered that the order and judgment are modified, on the law, without costs, by granting plaintiff's motion for partial summary judgment and denying defendant Royal Indemnity Company's cross motion for summary judgment to the extent that it is declared that said defendant has a duty to defend in the judicial action *United States v Stringfellow,* and, as so modified, affirmed.