[636 NYS2d 359]

Northville Industries Corporation, Respondent-Appellant, v National Union Fire Insurance Company of Pittsburgh, Pa., et al., Appellants-Respondents, et al., Defendants.

Second Department, December 29, 1995

20

## APPEARANCES OF COUNSEL

*Cozen & O'Connor,* New York City *(Sheldon Karasik* and *Peter M. Papasavas* of counsel), for National Union Fire Insurance Company of Pittsburgh, Pa., and others, appellants-respondents.

*Siff Rosen, P. C.,* New York City *(Ignatius John Melito* and *John Volpe* of counsel), for Hartford Accident and Indemnity Company, appellant-respondent.

*Wilson, Elser, Moskowitz, Edelman & Dicker,* New York City *(Richard S. Oelsner* and *Blaze D. Waleski* of counsel), for Continental Insurance Company and another, appellants-respondents.

*Paul, Weiss, Rifkind, Wharton & Garrison,* New York City *(Martin London, Maria T. Vullo, Michael P. Bowen,* and *Anderson, Kill, Olick & Oshinsky, P. C. [Jerold Oshinsky]* of counsel), for respondent-appellant.

*Stephan A. Bitterman,* Sloatsburg, and *Fox & Fox,* Newark, New Jersey *(Robert J. Rohrberger* of counsel), for LPT Realty Corp. and others, *amicus curiae.* (One brief filed.)

## OPINION OF THE COURT

SULLIVAN, J. P.

In *Technicon Elecs. Corp. v American Home Assur. Co.* (74 NY2d 66), the Court of Appeals discussed the meaning of the term "accidental" as employed in the standard "sudden and accidental" discharge exception to the pollution exclusion clause of a comprehensive general liability insurance policy. The present appeals and cross appeal now provide us with an opportunity to analyze the "sudden" component of that phrase. In so doing, we conclude that the discharges of gasoline in this case were not "sudden" so as to qualify under the exception.

### FACTUAL BACKGROUND

The facts underlying this controversy are essentially undisputed. The plaintiff, Northville Industries Corporation (hereinafter Northville), owns and operates facilities for the storage and distribution of petroleum products at terminals in Holtsville and East Setauket, New York. Both terminals include storage tanks and extensive networks of above-ground and underground pipelines and pumps through which petroleum products are transported. Over the years it has been conducting business, Northville has contracted with various

insurers to provide it with primary or excess comprehensive general liability policies. Insofar as relevant to these appeals, the defendants National Union Fire Insurance Company of Pittsburgh, Pa. (hereinafter National Union), and Hartford Accident and Indemnity Company (hereinafter Hartford) issued, *inter alia,* several primary liability insurance policies to Northville. The defendants Continental Insurance Company (hereinafter Continental) and Pacific Insurance Company (hereinafter Pacific) issued excess general liability policies to Northville which also covered portions of the period in question.

The primary coverage policies issued by National Union and Hartford contained the following pollution exclusion clause and qualifying "sudden and accidental" exception thereto:

"This insurance does not apply * * *

"(f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental"* (emphasis supplied). The Continental and Pacific excess coverage policies contained similar language, as follows:

"It is understood and agreed that this insurance does not apply to bodily injury, personal injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials, oil or other petroleum substance or derivative (including any oil refuse or oil mixed with waste) or other irritants, contaminants or pollutants into or upon land or the atmosphere, *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.* * * *

"It is further understood and agreed that in no event shall coverage provided by this policy for contamination and pollution be broader than that provided by the underlying insurances set forth in the schedule of underlying insurance" (emphasis supplied).

In October 1986, Northville discovered gasoline contamination in the groundwater beneath its Holtsville terminal while installing monitoring wells to comply with new licensing requirements of the New York State Department of Environmental Conservation (hereinafter DEC). Northville retained environmental engineers to locate the source of the gasoline

discharge. Shortly thereafter, Northville and the engineers determined that approximately 750,000 gallons of gasoline had leaked through an improperly installed elbow in an underground piping system. Two malfunctioning check valves in the piping were also detected. As a result of the leak, a gasoline plume and a larger "dissolved product plume" migrated beyond the Holtsville terminal and underneath neighboring properties. In reporting the incident to a local legislator, an officer of Northville wrote as follows: "On October 21, 1986 gasoline was discovered in three * * * monitoring wells located on the southern perimeter of the [Holtsville] terminal. Subsequent investigation of the source of the gasoline concluded in finding an underground leak in a piping network connected to the terminal's vapor recovery system. *Since the leaking connection was installed in 1976, it is quite possible that gasoline had been leaking since the time of the installation of that piping network*" (emphasis supplied).

In November 1987, also as a result of complying with DEC licensing requirements, gasoline was discovered in the groundwater beneath the East Setauket terminal. The source of the contamination was traced to a small "pin-hole" leak which was caused by internal corrosion in a pipe which had been installed in 1968 to carry gasoline to a truck loading rack. An estimated 1.2 million gallons of gasoline was released through this "pin-hole" leak but, as a Northville official explained, the loss "occurred slowly enough and over a sufficiently long period of time to be undetectable by [Northville's] inventory control system". As in the case of the Holtsville leak, an underground plume of gasoline and gasoline components migrated from the East Setauket terminal to neighboring properties.

Several lawsuits were subsequently commenced against Northville by affected property owners. According to the allegations of Northville, it notified, *inter alia,* National Union, Hartford, Continental, and Pacific (hereinafter collectively referred to as the insurers) of the pending lawsuits, but each of the appellant insurers failed or refused to defend and/or indemnify Northville with regard to these claims. It appears that Northville settled at least some of these underlying actions at its own expense. Accordingly, Northville commenced the instant action, *inter alia,* for a judgment declaring that the insurers were obligated to defend and indemnify it with regard to the underlying claims. The insurers separately cross-moved for summary judgment dismissing the complaint insofar as as-

serted against them, contending, among other things, that coverage was barred by the pollution exclusion clauses set forth in their policies issued to Northville. Northville similarly moved for partial summary judgment declaring that National Union and Hartford were liable to pay all expenses incurred by Northville in the defense of various underlying actions.

The Supreme Court issued an order and judgment which, *inter alia,* granted the insurers' cross motions to the extent of determining that they had no duty to indemnify Northville for claims arising out of the East Setauket contamination, but denied the cross motions with respect to indemnification for the Holtsville claims, on the ground that a triable question of fact existed with respect to that issue. The court reasoned that the "sudden and accidental" exception to the pollution exclusion clauses in the policies clearly did not apply to the East Setauket contamination because the leak in that instance had been the product of corrosion, which the court characterized as "a gradual natural process occurring over a long period of time". However, the court found that an issue of fact existed with respect to whether the Holtsville leak was "sudden", since it was possible that the leak occurred abruptly but remained undetected for many years. The court further granted Northville's motion to the extent of determining that National Union and Hartford were required to pay all costs of investigation and defense of the Holtsville and East Setauket claims. The court concluded that National Union and Hartford were required to defend Northville as to all claims because "when the leaks were initially discovered, no one knew for certain whether the release or discharge of gas was sudden and abrupt". We now modify the order and judgment to declare that the insurers have no obligation to defend or indemnify Northville in connection with either the Holtsville or the East Setauket incidents.

LEGAL ANALYSIS

### The Duty to Defend/Indemnify

It is by now a familiar and settled principle that an insurer's duty to defend is "exceedingly broad" *(Colon v Aetna Life & Cas. Ins. Co.,* 66 NY2d 6, 8), and indeed is far broader than the duty to indemnify *(see, Continental Cas. Co. v Rapid-American Corp.,* 80 NY2d 640; *Servidone Constr. Corp. v Security Ins. Co.,* 64 NY2d 419; *Beattie v Home Indem. Ins. Co.,* 170 AD2d 559). Hence, "[i]f the complaint contains any facts or allegations

which bring the claim even potentially within the protection purchased, the insurer is obligated to defend *(Ruder & Finn v Seaboard Sur. Co.,* 52 NY2d 663, 669-670)" *(Technicon Elecs. Corp. v American Home Assur. Co.,* 74 NY2d, *supra,* at 73; *see, Fitzpatrick v American Honda Motor Co.,* 78 NY2d 61). Conversely, "if the allegations of the underlying complaint allow for no interpretation that will bring them within the policy provisions, there is no duty to defend" *(Nancie D. v New York Cent. Mut. Fire Ins. Co.,* 195 AD2d 535, 536). The appellant insurers herein contend that any potential coverage for the gasoline leaks at Northville's Holtsville and East Setauket terminals is expressly negated by the terms of the pollution exclusion clauses found in the subject policies. "[W]hen an exclusion clause is relied upon to deny coverage, the insurer has the burden of demonstrating that the 'allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, *in toto,* are subject to no other interpretation' *(International Paper Co. v Continental Cas. Co.,* 35 NY2d 322, 325)" *(Technicon Elecs. Corp. v American Home Assur. Co., supra,* at 73-74; *see, Continental Cas. Co. v Rapid-American Corp., supra,* at 652). In other words, "an insurer can be relieved of its duty to defend if it establishes as a matter of law that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured under any policy provision" *(Allstate Ins. Co. v Zuk,* 78 NY2d 41, 45; *see, Nancie D. v New York Cent. Mut. Fire Ins. Co., supra; Beattie v Home Indem. Ins. Co., supra; New York Cas. Ins. Co. v Ward,* 139 AD2d 922).

There appears to be no genuine dispute in this case that the various underlying actions commenced against Northville by owners of property in the vicinity of the Holtsville and East Setauket terminals allege events which ordinarily would qualify as "occurrences" under the general terms of the subject policies. Nevertheless, these "occurrences" would seem to fall squarely within the pollution exclusions from coverage contained in those policies, since the complaints allege that Northville caused bodily injury and/or property damage by discharging gasoline into the areas surrounding the terminals. However, Northville contends that the allegations refer to "sudden and accidental" discharges of pollutants. Accordingly, Northville reasons that the "sudden and accidental" exception is operative, thereby obligating National Union and Hartford to defend it, and raising at least a question of fact regarding the appellant insurers' duty to indemnify. Since the existence of coverage turns entirely upon whether this exception to the

exclusion applies, the burden of demonstrating that applicability is upon Northville *(see, Redding-Hunter, Inc. v Aetna Cas. & Sur. Co.,* 206 AD2d 805, 807; *County of Fulton v United States Fid. & Guar. Co.,* 195 AD2d 864, 865; *Borg-Warner Corp. v Insurance Co.,* 174 AD2d 24, 31; *see generally, Technicon Elecs. Corp. v American Home Assur. Co., supra).* In determining whether Northville has sustained this burden, an examination of the relevant decisional law regarding pollution exclusion clauses is appropriate.

## The Pollution Exclusion Clause

The history and rationale of the pollution exclusion clause, as well as the enactment and subsequent repeal of legislation mandating the inclusion of the clause in comprehensive general liability policies in New York, were discussed at length in this Court's decision in *Technicon Elecs. Corp. v American Home Assur. Co.* (141 AD2d 124, 141-143, *affd* 74 NY2d 66, *supra)* and need not be repeated here. Central to the present inquiry is whether the pollution in this case is alleged to have been, or was in fact, "sudden and accidental" so as to revive coverage under the exception to the exclusion. It is well settled that the exception does not come into play unless the alleged discharge satisfies both the "sudden" and the "accidental" criteria. Indeed, "[s]ince the exception is expressed in the conjunctive, both requirements must be met for the exception to become operative" *(Technicon Elecs. Corp. v American Home Assur. Co.,* 74 NY2d, *supra,* at 75; *see, State of New York v AMRO Realty Corp.,* 936 F2d 1420, 1427; *Ogden Corp. v Travelers Indem. Co.,* 924 F2d 39, 42). While the question of whether these dual requirements have been met necessitates "two distinct inquiries" *(Borg-Warner Corp. v Insurance Co.,* 174 AD2d, *supra,* at 30), we need only concern ourselves with the "sudden" prong of the exception in this case, as it proves dispositive of the present controversy.

The insurers contend that the discharges of gasoline at the Holtsville and East Setauket terminals, both as alleged in the underlying actions and as admitted by Northville itself, occurred gradually and over periods of years, thereby negating any view that they were sudden in nature. Northville, however, maintains that the discharges were sudden because they were unexpected and remained undetected for lengthy periods through no fault of Northville. Our decision in *Technicon* and the weight of relevant judicial authority convince us that the appellant insurers are correct. In *Technicon,* a manufacturer

intentionally discharged waste materials into waterways over a number of years in the regular course of its business. When the manufacturer was sued for personal injuries allegedly resulting from the discharges, its liability carriers refused to defend or indemnify it, relying upon the pollution exclusions in the policies. We agreed with the insurers that the "sudden and accidental" exception to the exclusion was unambiguous and did not apply because the discharge had continued over a lengthy period (and thus was not "sudden") and was performed intentionally (and hence was not "accidental"). In specifically discussing the "sudden" component of the exception, we construed the term according to its ordinary meaning and observed that a sudden event is one which "occurs over a short period of time" *(Technicon Elecs. Corp. v American Home Assur. Co.,* 141 AD2d 124, 137, *supra)* and is inconsistent with a gradual or continuous process.

Although the Court of Appeals found it unnecessary to reach the suddenness issue in affirming *Technicon* (74 NY2d 66, 76, *supra),* other courts have focused, as we did, on the temporal aspect of the requirement. In *American Ins. Co. v Fairchild Indus.* (852 F Supp 1173, 1180, *affd* 56 F3d 435), a case remarkably similar to that at bar, the court determined that under New York law a "slow undetected leak that lasted many years", whether caused by corrosion in an underground storage tank or by the effects of thermal fluctuations on certain underground pipe fittings, was not sudden because it did not occur abruptly. Likewise, in *State of New York v AMRO Realty Corp.* (936 F2d 1420, 1428, *supra),* the court applied our decision in *Technicon* to find that a claim regarding a manufacturer's disposal of waste "by certain improper methods for close to thirty years, cannot be understood to allege a 'sudden' release". Other Federal decisions applying New York law have come to similar conclusions *(see, e.g., Ogden Corp. v Travelers Indem. Co.,* 924 F2d 39, *supra* [contamination alleged to have occurred continuously from 1950 through 1983 is not sudden]; *EAD Metallurgical v Aetna Cas. & Sur. Co.,* 905 F2d 8 [allegation that pollution was released from March 1977 through 1983 described continuous process rather than sudden event]; *Freedom Gravel Prods. v Michigan Mut. Ins. Co.,* 819 F Supp 275, 281 [allegations of continued pollution during a three-month period "do not comport with an objective determination of suddenness" since "(t)he phrases 'during' and 'continued' do not, as alleged, ordinarily lend themselves to an interpretation of suddenness"]; *Olin Corp. v Insurance Co.,* 762 F Supp 548, 560, *affd* 966 F2d 718 [claim that DDT was discharged from

plant throughout a 16-year period negates suddenness, since "(u)nder New York law, the word 'sudden' implies a temporal element" and "an event which lasts for an extended period of time is not 'sudden' "]).

Similarly, this Court has adhered to the views expressed in its *Technicon* decision *(see, e.g., Powers Chemco v Federal Ins. Co.,* 144 AD2d 445, *affd* 74 NY2d 910), and other cases have followed its focus on the temporal aspect of suddenness *(see, e.g., Redding-Hunter Inc., v Aetna Cas. & Sur. Co.,* 206 AD2d 805, 807, *supra* [the pollution exclusion applies where "(t)he complaint in issue does not allege an abrupt or quick discharge of contaminants, but rather suggests that the discharge occurred over a long period"]; *County of Fulton v United States Fid. & Guar. Co.,* 195 AD2d 864, 865, *supra* [" 'sudden' discharge is instantaneous, not long-lasting or continuous"]; *Borg-Warner Corp. v Insurance Co.,* 174 AD2d 24, 31, *supra* ["for a release or discharge to be 'sudden' within the meaning of the pollution exclusion, it must occur abruptly or quickly"]).

Notwithstanding the foregoing authority, Northville urges that any inquiry into the suddenness of a particular discharge should focus upon an "expectation" element, so as to render "sudden" any release of pollutants which is "unexpected". The contention is not without some support in New York case law. For example, in *Allstate Ins. Co. v Klock Oil Co.* (73 AD2d 486), the Appellate Division, Fourth Department, observed in dicta that an alleged gasoline leak from an underground tank at an automobile dealership could have been both "sudden and accidental" because it was unexpected and unintended, even though it went undetected for a substantial period of time. Similarly, in *Colonie Motors v Hartford Acc. & Indem. Co.* (145 AD2d 180), the Appellate Division, Third Department, reasoned that waste oil emanating from a crack in an underground pipe was "sudden and accidental" where it was unexpected, unintended, and was not readily discoverable. In *State of New York v Aetna Cas. & Sur. Co.* (155 AD2d 740), the Appellate Division, Third Department, concluded that a leak from an underground gasoline tank which occurred over many years could nevertheless be "sudden and accidental" because it remained undetected and because neither the owner of the storage tank nor the owners of the property in which the tank was situated had been aware of the leak. Likewise, in *Petr-All Petroleum Corp. v Fireman's Ins. Co.* (188 AD2d 139), the Appellate Division, Fourth Department, found that a gasoline leak could be "sudden and accidental" where the underlying

complaint could be interpreted to allege an accidental and unexpected leak from a subsurface pipe or tank which continued undetected for a period of time.

We find the rationale of the foregoing decisions unpersuasive. Significantly, the Appellate Division, Third Department, clarified its position on the issue of suddenness following the Court of Appeals decisions in *Technicon Elecs. Corp. v American Home Assur. Co.* (74 NY2d 66, *supra*) and *Powers Chemco v Federal Ins. Co.* (144 AD2d 445, *affd* 74 NY2d 910, *supra*), as follows: "While the Court of Appeals has never expressly addressed the meaning of 'sudden', its analysis in both *Technicon Elecs. Corp. (supra)* and *Powers Chemco (supra)* leads us to the inescapable conclusion that the inquiry focuses upon the temporal nature of the activity. By acknowledging that 'sudden' and 'accidental' are independent requirements, the court necessarily rejected the argument * * * that 'sudden' simply means 'unexpected' and is therefore synonymous with accidental. Only by allowing 'sudden' to retain its temporal aspect does the term attain independent significance. Thus, for a release or discharge to be 'sudden' within the meaning of the pollution exclusion, it must occur abruptly or quickly or 'over a short period of time' " *(Borg-Warner Corp. v Insurance Co., 174 AD2d 24, 31, supra)*. Given the shift by the Appellate Division, Third Department, in its construction of the term "sudden" from a focus on an expectation element to a temporal aspect, the precedential value of that Court's decisions in *Colonie Motors v Hartford Acc. & Indem. Co.* (145 AD2d 180, *supra*) and *State of New York v Aetna Cas. & Sur. Co.* (155 AD2d 740, *supra*) is highly questionable *(see, American Ins. Co. v Fairchild Indus.,* 852 F Supp 1173, 1182, *supra)*.

Moreover, while the Appellate Division, Fourth Department, adheres to an expectation analysis in evaluating whether a given release of pollutants is "sudden", we find that such an analysis ignores any meaningful distinction between the independent requirements of "sudden" and "accidental", and instead suggests that both elements are satisfied where the discharge is merely "unexpected", regardless of the length of time over which it occurs. In our view, such an approach contradicts the plain meaning of the term "sudden" and reduces it to a superfluous requirement in contravention of the settled principle that every term in an insurance agreement is deemed to have some meaning and should not be assumed to have been idly inserted *(see, Technicon Elecs. Corp. v American Home Assur. Co.,* 141 AD2d 124, 140, *supra)*. Furthermore, to

the extent that Northville relies upon the Appellate Division, Fourth Department, cases to read a discovery rule into the "sudden and accidental" exception, we note that the exceptions in the policies at issue contain no language indicating that an insured's awareness of or ability to reasonably detect the discharge of pollutants has any impact upon whether that discharge is "sudden". We refuse to vary the unambiguous terms of the subject clauses in this case by reading such a provision into them (see, Technicon Elecs. Corp. v American Home Assur. Co., supra, at 140, affd 74 NY2d 66, 76, supra). Hence, we do not consider the decisions in Allstate Ins. Co. v Klock Oil Co. (73 AD2d 486, supra) and Petr-All Petroleum Corp. v Fireman's Ins. Co. (188 AD2d 139, supra) to constitute persuasive authority on the issue of suddenness.

We similarly reject Northville's contention that a release of pollutants need only be sudden in its "inception" but not in its "duration" in order to qualify for the exception. The fallacy of the argument is readily apparent, since every dispersal of pollution begins with the abrupt entry of molecules of the offending substance into the surrounding environment. Hence, were we to accept Northville's strained construction of the exception, the suddenness requirement would be rendered meaningless because all discharges of pollutants are necessarily sudden at the time of their inception. Moreover, Northville's claim that a discharge may be considered "sudden" as long as its cause was unexpected finds no genuine support in decisional law or in the terms of the "sudden and accidental" exception itself. Indeed, the suddenness component, whether analyzed according to the temporal aspect or the "expectation" element, pertains to the discharge or release of pollutants itself, not to the cause of that discharge (see, Technicon Elecs. Corp. v American Home Assur. Co., 74 NY2d 66, 76, supra ["the pollution exclusion clause * * * is directed at the polluting act itself— the discharge, dispersal or escape"]). For the same reason, Northville's contention that New York draws a distinction with regard to suddenness between situations in which entities cause pollution by their disposal of waste materials in the normal course of business and those in which the pollution results from undetected underground discharges is unavailing. While such a distinction may figure prominently in an analysis of whether a particular discharge is "accidental", it does not shed any light on the discrete question of whether it is "sudden", nor does the language of the insurance policies in issue draw such a distinction.

Accordingly, we decline to depart from our reliance on the temporal aspect of the term "sudden" in reviewing cases such as the matter at bar. Indeed, our focus on the temporal aspect most closely comports with the ordinary meaning of the term and is consistent with our prior decisions and with the persuasive judicial authority on this subject.

### The Underlying Complaints

Northville maintains that the Holtsville and East Setauket discharges resulted in the filing of numerous complaints and claims against it, the allegations of which fell within the "sudden and accidental" exceptions to the subject pollution exclusion clauses and thereby triggered the duty to defend. However, an examination of the three underlying complaints contained in the record demonstrates that none of them alleged a "sudden" discharge.

The first of these complaints (i.e., the Friedman action) sought recovery for injuries allegedly caused by the release of toxic substances from Northville's East Setauket terminal into the surrounding environment. As such, the allegations clearly fell within the pollution exclusions from coverage. Moreover, contrary to Northville's assertion, the allegations did not suggest a sudden discharge of pollutants. Rather, the opposite is true, since the only allegation regarding the temporal aspect of the pollution was that "[the] leak had been occurring for many months or years without detection by [the injured parties]".

Likewise, the second complaint in the record (i.e., the Cheyenne action) alleged injury as a result of the gasoline leaks at the Holtsville and East Setauket terminals. The complaint in the Cheyenne action did not assert that the release of pollutants had been sudden, but instead was replete with allegations that the discharge occurred continuously over a number of years:

"The leak (spill) had, upon information and belief, been occurring for many years * * *

"Northville owed a duty to Cheyenne * * * to prevent an enormous discharge of gasoline after an initial leakage * * *

"Upon information and belief * * * the * * * Setauket leak had been occurring for many years before it was claimed to have been discovered by Northville, and, upon information and belief, extensive plumes of contamination resulted from that leak * * *

"Northville had notice of said leak and leakages by reason of same having existed for an unreasonable period of time prior to discovery thereof".

Similar allegations were set forth in the third complaint (i.e., the Shero action), including the following:

"NORTHVILLE maintained leaks in its transmission system and/or pipeline at or near its terminals in * * * Setauket * * * and Holtsville * * * and upon information and belief, these leaks had been occurring for many months or years * * *

"the leaks had been occurring for many months or years without detection by * * * NORTHVILLE * * *

"NORTHVILLE had notice of said leakage or leakages by reason of same having existed for an unreasonable amount of time prior to discovery thereof * * *

"NORTHVILLE, up to and including October 21, 1986, [and] for many years prior thereto, had maintained and caused a continuous leakage of its pipeline and storage facilities at its Holtsville Terminal and East Setauket Terminal".

Additionally, Northville submitted documents indicating that a party known as Haven Associates had applied for damage compensation from the New York State Environmental Protection and Spill Compensation Fund in May 1988. These documents alleged that the East Setauket gasoline discharge had occurred "[o]n or prior to November 3, 1987", and "[u]pon information and belief, [the] discharge has not yet terminated".

As the foregoing excerpts demonstrate, the allegations of the underlying complaints against Northville fall squarely within the pollution exclusion clauses of the subject liability insurance policies. Moreover, those allegations state that the Holtsville and East Setauket discharges were gradual and continuous over periods of months or years, and do not suggest that they were abrupt, instantaneous, or occurring within a short period of time. Therefore, the "sudden and accidental" exception is inapplicable, coverage is excluded under the policies, and the appellant primary insurers were under no obligation to defend or indemnify Northville in connection with these claims. In this regard, the Supreme Court erred in determining that since it was not known whether the leaks were sudden at the time of their discovery, the duty to defend was triggered. It is well settled that the duty to defend is determined by reviewing the allegations set forth in the underlying complaints and the terms of the insurance policies (see, Technicon Elecs. Corp. v American Home Assur. Co., 74 NY2d 66, 73, supra). Inasmuch as the underlying allegations in this case cannot in any manner be interpreted to allege "sudden" discharges, the duty to defend did not arise.

While our analysis of the obligation to defend is premised on the underlying allegations against Northville, additional sup-

port for our conclusion may be found in Northville's own admissions regarding the nature of the discharges. Indeed, it is clear from a letter of Northville, dated January 1988, that shortly after the Holtsville discharge was discovered and prior to the commencement of the underlying actions, Northville determined that the leak had been caused by a faulty piping connection which, since 1976, had dispersed some 750,000 gallons of gasoline into the surrounding premises. The Supreme Court determined that a question of fact existed with regard to whether the appellant insurers were required to indemnify Northville for claims arising out of this contamination because it was possible that the leak had been abrupt and merely had remained undetected for many years. This was error, inasmuch as neither the allegations of the underlying claims nor the facts as conceded by Northville suggested that the dispersal occurred abruptly and over a short period of time, and thereafter merely went undetected. Rather, the claims alleged, and the evidence established, that the leak was active and continuing in nature for a lengthy period of time.

Similarly, it is undisputed that approximately two weeks after the discovery of the East Setauket contamination, Northville notified its insurers that the discharge had resulted from a one-eighth-inch "pin hole" in a corroded underground pipe. This "pin-hole" leak permitted the release of 1.2 million gallons of gasoline into the environment over a period of as much as 20 years, the discharge being so gradual that it went undetected by Northville's own inventory control system. We cannot conceive of any rational interpretation of these facts which would suggest the possibility that the East Setauket discharge was "sudden". Accordingly, we agree with the Supreme Court's determination that no duty to indemnify existed with regard to the East Setauket contamination, although we note that the court mistakenly relied upon the gradual process of corrosion which caused the leak, rather than the continuous and ongoing nature of the discharge itself, in reaching this conclusion.

Therefore, pursuant to both the allegations of the claims asserted by third parties against Northville and Northville's own factual admissions in the record, the discharges fell within the subject pollution exclusions and could not possibly come under the "sudden and accidental" exceptions thereto. As such, the appellant insurers had no duty to defend or indemnify Northville for claims arising out of these discharges.

### Regulatory Estoppel

█ Northville and the *amicus curiae* further contend that even if the "sudden and accidental" exception does not apply herein, the appellant insurers should be estopped from denying coverage because the insurance industry allegedly previously made false and misleading representations to regulatory officials in New York and elsewhere regarding the true meaning of the phrase "sudden and accidental". The primary authority cited in support of this proposition is the 1993 decision of the New Jersey Supreme Court in *Morton Intl. v General Acc. Ins. Co.* (134 NJ 1, 629 A2d 831, *cert denied* — US —, 114 S Ct 2764).

The estoppel issue is not properly before us on this appeal, since Northville never advanced this contention in the Supreme Court notwithstanding the fact that it had ample time and opportunity to do so *(see, e.g., Lee v Long Is. R. R., 204 AD2d 280; Matter of Partos, 203 AD2d 578; Matter of Aetna Cas. & Sur. Co. v Scirica, 170 AD2d 448)*. Indeed, "[a]n appellate court should not, and will not, consider different theories or new questions, if proof might have been offered to refute or overcome them had they been presented in the court of first instance *(Rentways, Inc. v O'Neill Milk & Cream Co., 308 NY 342, 349)" (Orellano v Samples Tire Equip. & Supply Corp., 110 AD2d 757, 758)*. Since Northville's failure to raise the regulatory estoppel issue in the Supreme Court denied the appellant insurers an opportunity to submit evidence and argument in opposition thereto, and has likewise deprived our Court of a complete record upon which to exercise reasoned review of the matter, we decline to reach the issue.

#### CONCLUSION

Upon determining that any inquiry into the suddenness of a pollution discharge should focus upon the temporal aspect of the term "sudden", we conclude that the appellant insurers have sustained their burden of demonstrating as a matter of law that the underlying claims against Northville fall squarely within the pollution exclusions. Moreover, Northville has failed to raise a genuine triable issue of fact with regard to the applicability of the "sudden and accidental" exceptions to the exclusions from coverage. Accordingly, the appellant insurers are entitled to summary judgment declaring that they are under no obligation to defend and/or indemnify Northville with regard to these claims.

In view of the foregoing, we need not reach the parties' remaining contentions.

The appeals of American Home Assurance Company, Illinois National Insurance Company, Insurance Company of State of Pennsylvania, Landmark Insurance Company, and Lexington Insurance Company must be dismissed, as those parties are not aggrieved by the order and judgment appealed from *(see,* CPLR 5511).

Accordingly, the order and judgment is modified, on the law, by (1) deleting therefrom the provision which granted the plaintiff's motion for partial summary judgment to the extent of determining that the appellants National Union and Hartford are required to pay all costs associated with the defense of the Holtsville and East Setauket claims, and substituting therefor a provision denying the motion, and (2) deleting therefrom the provisions denying so much of the respective cross motions of the appellants National Union, Hartford, Continental, and Pacific for summary judgment as related to indemnification for the Holtsville claims and severing that issue for trial, and substituting therefor a provision granting the cross motions and declaring that those appellants are under no obligation to defend and/or indemnify the plaintiff with regard to the East Setauket and Holtsville claims; and as so modified, the order and judgment is affirmed insofar as appealed from by the appellants National Union, Hartford, Continental, and Pacific, and cross-appealed from by Northville.

O'BRIEN, COPERTINO and KRAUSMAN, JJ., concur.

Ordered that the appeals of the defendants American Home Assurance Company, Illinois National Insurance Company, Insurance Company of State of Pennsylvania, Landmark Insurance Company, and Lexington Insurance Company, are dismissed, without costs or disbursements, as those parties are not aggrieved by the order and judgment appealed from *(see,* CPLR 5511); and it is further,

Ordered that the order and judgment is modified, on the law, by (1) deleting therefrom the provision which granted the plaintiff's motion for partial summary judgment to the extent of determining that the defendants National Union Fire Insurance Company of Pittsburgh, Pa., and Hartford Accident and Indemnity Company are required to pay all costs associated with the defense of the Holtsville and East Setauket claims, and substituting therefor a provision denying the motion, and (2) deleting therefrom the provisions denying so much of the respective cross motions of the defendants National Union Fire Insurance Company of Pittsburgh, Pa., Hartford Accident and

Indemnity Company, Continental Insurance Company, and Pacific Insurance Company for summary judgment as related to indemnification for the Holtsville claims and severing that issue for trial, and substituting therefor a provision granting the cross motions and declaring that those defendants are under no obligation to defend and/or indemnify the plaintiff with regard to the East Setauket and Holtsville claims; and as so modified, the order and judgment is affirmed insofar as appealed from by the defendants National Union Fire Insurance Company of Pittsburgh, Pa., Hartford Accident and Indemnity Company, Continental Insurance Company, and Pacific Insurance Company and cross-appealed from by the plaintiff, without costs or disbursements.

Motion by the respondent-appellant Northville Industries Corporation on appeals and a cross appeal from an order and judgment (one paper) of the Supreme Court, Suffolk County, dated January 3, 1995, (1) to strike "Addendum A" to the brief filed by the appellants-respondents Continental Insurance Company and Pacific Insurance Company, (2) to strike pages A1806-A3062 from the joint Appendix filed by the appellants-respondents National Union Fire Insurance Company of Pittsburgh, Pa., Hartford Accident and Indemnity Company, Continental Insurance Company, and Pacific Insurance Company, (3) to strike all references in the briefs to these materials, and (4) for an award of costs.

Cross motion by the appellants-respondents to supplement the record on appeal, and strike the references and arguments in the briefs of Northville Industries Corporation which are not supported by evidence in the record.

By decision and order on motion of this Court dated September 8, 1995, the motion and cross motion were held in abeyance and referred to the Justices hearing the appeal for determination upon the argument or submission of the appeal.

Upon the papers filed in support of the motion and cross motion and the papers filed in opposition thereto, and upon the argument of the appeals and cross appeal, it is,

Ordered that the motion is granted to the extent that (1) "Addendum A" to the brief filed by the appellants-respondents Continental Insurance Company and Pacific Insurance Company is stricken, (2) pages A1806-A1817, A1891-A2196, and A2200-A3062 of the joint Appendix filed by the appellants-respondents are stricken, and (3) all references in the briefs to

the foregoing materials are stricken, and the motion is otherwise denied; and it is further,

Ordered that the cross motion is denied.

The stricken materials have not been considered in the resolution of the parties' appeals and cross appeal.