*873 In September 1998, the plaintiff and his wife purchased a house in Levittown, New York, and financed the purchase with a mortgage loan from the defendant Emigrant Mortgage Company, Inc. (hereinafter Emigrant). In connection with the foregoing loan, Emigrant made available, to the plaintiff and his wife, a group accidental death and dismemberment insurance plan, with a policy underwritten by the defendant Bankers American Life Assurance Company (hereinafter Bankers American). The plaintiff and his wife enrolled in the plan, and Bankers American issued them an accidental death and dismemberment insurance policy (hereinafter the Bankers American Policy). The Bankers American Policy disclosure statement recited, inter alia, that it was a policy for “Accidental Death, Dismemberment or Loss of Sight Benefit,” and that it did not provide coverage for sickness. However, the statement and the policy also specified certain exclusions from coverage, including “disease or medical or surgical treatment of disease except pyogenic infection” (emphasis added). The insurance premium payments for the policy were included in the monthly mortgage payments to Emigrant, which was responsible for forwarding the insurance premium payments to Bankers American.
In early 2000, Bankers American informed Emigrant that, effective April 1, 2000, it would be cancelling its participation in the program pursuant to which the Bankers American Policy had been issued. As a result, Emigrant arranged with the defendant Northstar Life Insurance Company (hereinafter Northstar) to make available to plan participants an alternative *874 group accidental death and dismemberment insurance plan at the same cost, with a policy providing coverage similar to the Bankers American Policy (hereinafter the Northstar Policy). Thereafter, on April 11, 2000, Emigrant allegedly sent a notice to plan participants, including the plaintiff and his wife, in form - ing them of the cancellation of the Bankers American Policy and of the availability of the Northstar Policy. Enclosed with the notice was a proposed certificate of insurance from Northstar. The Northstar certificate of insurance recited, inter alia, that the Northstar Policy “provides accident only insurance and does not pay benefits for loss from sickness.” Significantly, the Northstar policy also contained a section defining “death by accidental injury,” and, in contrast to the Bankers American Policy, simply stated that coverage was not provided for death resulting directly or indirectly from “infection.” The notice further informed plan participants that “[y]ou can show your acceptance of the Northstar plan by making your usual monthly mortgage payment.” The notice also asked plan participants to “review the enclosed certificate carefully” and to “complete the enclosed Verification of Information form, noting any corrections to the certificate, and mail it to Northstar.”
The plaintiff contends that neither he nor his wife ever received the foregoing notice or the Northstar certificate of insurance. They did, however, continue to make their usual mortgage payments to Emigrant subsequent to April 2000.
The plaintiffs wife died on March 28, 2006. She had been suffering from colorectal cancer, but her treating physician determined that a “pyogenic infection” caused her death. Her death certificate reflects that she died of natural causes. In May 2006, the plaintiff submitted a notice of claim to Bankers American for benefits under the Bankers American Policy, based on his wife’s death. Subsequently, in November 2006, the defendant Union Security Life Insurance Company of New York (hereinafter Union Security), into which Bankers American had apparently been merged, denied the claim, inter alia, on the ground that the wife had died of natural causes. In reply, the plaintiff argued that the Bankers American Policy clearly provided coverage for his wife’s death, based on the exception for pyogenic infection within the exclusion from coverage for disease or medical or surgical treatment of disease. In response, Union Security stated that the Bankers American Policy had been terminated in 2000 and that, pursuant to Emigrant’s arrangements with Northstar, the current insurance carrier was Northstar.
Thereafter, in February 2007, the plaintiff submitted a notice *875 of claim to Northstar for benefits allegedly due to him under the Bankers American Policy, based on his wife’s death, again referencing the exception for pyogenic infection within the exclusion from coverage of death caused by disease or medical or surgical treatment of disease. In May 2007, Minnesota Life, apparently serving in an administrative capacity, informed the plaintiff that the claim was payable, but requested further personal information from him in order to process the claim. On June 6, 2007, Northstar informed the plaintiff that a check had been sent to him, representing payment under the claim. However, on June 15, 2007, Northstar informed the plaintiff that the claim had been denied on the ground that his wife’s death was not “accidental,” as defined in the Northstar Policy. The record indicates that, sometime in 2007, Fort Dearborn Life Insurance Company acquired Northstar and renamed it Fort Dearborn Life Insurance Company of New York (hereinafter Fort Dearborn).
Ultimately, in January 2008, the plaintiff commenced the instant action against, among others, Northstar, Bankers American, Union Security, and Emigrant, inter alia, to recover benefits allegedly due to him under the Bankers American Policy, based on his wife’s death caused by pyogenic infection. The plaintiff alleged in the complaint, among other things, that Northstar had “assumed” the Bankers American Policy.
After joinder of issue, the defendants Fort Dearborn and Northstar together moved for summary judgment dismissing the complaint insofar as asserted against them. The movants argued, inter alia, that the death of the plaintiffs wife was not a covered event under the terms of the Northstar policy, and they expressly denied “the plaintiffs claim that the decedent did not receive the notice [of cancellation of the Bankers American policy].” The plaintiff opposed the motion, and cross-moved for summary judgment on the complaint insofar as asserted against Bankers American, Northstar, and Emigrant. In support of his cross motion, the plaintiff submitted, inter alia, an affidavit in which he denied ever receiving notice of cancellation of the Bankers American Policy, and a letter from his wife’s treating physician wherein the physician stated, among other things, that “pyogenic disease . . . ultimately led to [the wife’s] untimely demise.” The Supreme Court, inter alia, denied the plaintiffs cross motion for summary judgment on the complaint. The plaintiff appeals, and we modify.
In the order appealed from, the Supreme Court “rejected the plaintiffs contention that the Bankers Certificate is still applicable.” However, the record does not support the conclusion *876 that the plaintiff or his wife ever received notice that their Bankers American Policy had been cancelled (see Tracy v William Penn Life Ins. Co. of N.Y., 234 AD2d 745 [1996]). The plaintiff established, prima facie, that neither he nor his wife received notice that the Bankers American Policy was cancelled, and neither Fort Dearborn nor Northstar raised a triable issue by fact as to whether such notice was received (see Nocella v Fort Dearborn Life Ins. Co. of N.Y., 99 AD3d 877 [2012] [decided herewith]). Therefore, at the time of the death of the plaintiffs wife, the Bankers American Policy remained in effect with respect to the plaintiff and his wife (see generally Sea Ins. Co. v Kopsky, 137 AD2d 804 [1988]; Government Empls. Ins. Co. v Mizell, 36 AD2d 452 [1971]; see also 11 NYCRR 52.18 [c]).
In addition, the Bankers American Policy provided benefits for death caused by “pyogenic infection.” Initially, we note that “exclusions are generally construed narrowly and exceptions to exclusions are generally construed broadly to find coverage” (Borg-Warner Corp. v Insurance Co. of N. Am., 174 AD2d 24, 33 [1992]; see Thomas J. Lipton, Inc. v Liberty Mut. Ins. Co., 34 NY2d 356, 361 [1974]; MDW Enters. v CNA Ins. Co., 4 AD3d 338, 340 [2004]). Here the Bankers American Policy generally provided, inter alia, that it would “pay a [full] benefit for loss of life.” It thereafter sets forth an exclusion provision which states, in pertinent part, that “this certificate does not cover any loss caused in whole or in part, directly or indirectly from ... (4) disease or medical or surgical treatment of disease except pyogenic infection” (emphasis added). Thus, “[the policy’s] general coverage provision is followed by an express . . . exclusion provision which narrows the type of event for which coverage is afforded and, in turn, by an exception to that exclusion which would revive the coverage” (Technicon Elecs. Corp. v American Home Assur. Co., 74 NY2d 66, 74 [1989]; see Borg-Warner Corp. v Insurance Co. of N. Am., 174 AD2d at 33). Moreover, where an insurance policy is ambiguous, “the policy must be narrowly interpreted in favor of the insured” (MDW Enters, v CNA Ins. Co., 4 AD3d at 340), and ambiguous contract terms are interpreted against the drafter (see Guardian Life Ins. Co. of Am. v Schaefer, 70 NY2d 888, 890 [1987]). Therefore, even if the subject policy language is ambiguous, the exception to the exclusion should be interpreted broadly so as to find coverage.
Finally, the defendants did not offer any evidence to refute the statement made by the treating physician of the plaintiffs wife that pyogenic disease caused her death. Accordingly, the plaintiff established his prima facie entitlement to judgment as *877 a matter of law against Bankers American on his cause of action to recover the stated benefit for loss of life under the Bankers American Policy. In opposition thereto, Bankers American failed to raise a triable issue of fact (see generally Alvarez v Prospect Hosp., 68 NY2d 320 [1986]). Thus, the Supreme Court should have granted that branch of the plaintiffs cross motion which was for summary judgment on the cause of action to recover compensatory damages against Bankers American.
However, the plaintiff was not entitled to summary judgment on his claim for punitive damages. Indeed, there is nothing in the record which would support an award of punitive damages against Bankers American, and to the extent that the complaint asserts an independent cause of action for such damages, such a cause of action is not recognized under New York Law (see Aronis v TLC Vision Ctrs., Inc., 49 AD3d 576 [2008]). Inasmuch as the plaintiff established that the Bankers American Policy was never cancelled, it is axiomatic that said policy was not replaced with the one issued by Northstar. Accordingly, the plaintiff failed to demonstrate his entitlement to judgment as a matter of law against Northstar. Moreover, the plaintiff did not demonstrate his entitlement to judgment as a matter of law against Emigrant.
In light of the foregoing, we need not address the plaintiffs remaining contentions. Belen, J.P, Lott, Sgroi and Cohen, JJ., concur.