**Kenneth E. RAINE, as Trustee under a Trust Agreement (1954), Plaintiff–Appellant,**

v.

**RKO GENERAL, INC.; Turner Entertainment Co., Defendants–Appellees,**

**RKO Pictures, Inc., Defendant.**

No. 101, Docket 96–9564.

United States Court of Appeals, Second Circuit.

Argued Nov. 13, 1997.

Decided Feb. 27, 1998.

Jeffrey A. Oppenheim, Kane Kessler, P.C., New York City, for Appellant.

James H. Neale, Owen Davis P.C., New York City, for Appellee RKO General, Inc.

David Dunn, Davis, Scott, Weber, & Edwards, New York City, for Appellee Turner Entertainment Co.

Before: VAN GRAAFEILAND, McLAUGHLIN, Circuit Judges, and GOLDBERG, Judge.*

McLAUGHLIN, Circuit Judge:

## BACKGROUND

In the early 1950's there was a labor dispute between the major Hollywood movie studios and the union of musicians working on movie soundtracks. In 1954, to settle the dispute, the major producers and distributors reached the Hollywood Film Trust Agreement (the "Agreement") in which they agreed to contribute a certain percentage of their revenue from certain films to a trust. The Agreement created the Hollywood Film Trust (the "Trust") whose purpose was to create a fund that would support free public performances by instrumental musicians. Those who signed the Agreement, referred to as "first parties," must pay the Trust five per cent of their revenue from the films covered by the Agreement ("Covered Films"). Covered Films are all films made between September 1, 1946 and January 31, 1958 in which members of the American Federation of Musicians participated. The Agreement provides that first parties may not transfer their rights in Covered Films unless they ensure that the transferee is made a first party to the Agreement and thus replenish the fund. The Agreement also provides that it is binding "upon subsidiaries of each first party."

The Trust, and the related obligations under the Agreement, "continue so long as any of the films ... continue to be used." Many of the Covered Films are shown regularly to this day. Thus, the Agreement is still in force and is enforced by Kenneth Raine, as trustee of the Trust.

In 1955, RKO Radio Pictures, Inc., one of the major studios, signed the Agreement and thereby became a first party. RKO Radio Pictures, Inc. later became RKO General, Inc. ("RKO"). In 1984, RKO assigned all rights in its Covered Films to its wholly-owned subsidiary, RKO Pictures, Inc. ("Pic-

tures"), which assumed all of RKO's liabilities relating to the Covered Films. Pictures did not, however, actually sign the Agreement.

In late 1984, shortly after assigning the rights in its Covered Films to Pictures, RKO transferred all the shares of Pictures to RKO Enterprises, Inc. ("Enterprises"), a wholly-owned subsidiary of GenCorp, Inc. ("GenCorp"). Neither Enterprises nor GenCorp signed the Agreement. After the transfer of Pictures' stock to Enterprises, all payments to the Trust relating to RKO's Covered Films came to an abrupt halt.

In 1987, Entertainment Acquisition Co. ("EAC") sought to acquire Pictures from Enterprises. At the same time, EAC was negotiating to license all of Pictures' film rights to Turner Entertainment Co. ("Turner"). EAC eventually agreed to license the RKO film library to Turner if EAC were to succeed in acquiring Pictures. In September 1987, it did succeed, and Enterprises sold all shares of Pictures to EAC. Pursuant to its agreement with Turner, EAC then caused Pictures to license the RKO films to Turner. Although Turner agreed to assume certain of Pictures' liabilities relating to the Covered Films, Turner did not sign the Agreement. Turner has never made a payment to the Trust under the Agreement.

Under the licensing agreement between Turner and Pictures, Turner has exclusive television broadcast rights to the RKO film library, and Turner is the only entity authorized to collect revenue from such broadcasts. RKO has not received any revenue from the exhibition of Covered Films since Enterprises sold all stock in Pictures to EAC.

On June 9, 1994, Raine, as trustee, brought suit in the Supreme Court of the State of New York, New York County, alleging that RKO, Pictures, and Turner breached the Agreement by failing to make payments to the Trust. Besides seeking damages for breach of contract from RKO, Pictures, and

---

* The Honorable Richard W. Goldberg, of the United States Court of International Trade, sitting by designation.

Turner, Raine sought a declaration that Turner is bound by the Agreement.

The defendants removed the case to the United States District Court for the Southern District of New York (Cote, *Judge*), pursuant to 28 U.S.C. §§ 1332 & 1441. The parties stipulated to dismissal of all claims against Pictures. Both RKO and Turner moved for summary judgment, and Judge Cote granted both motions. Raine now appeals.

## DISCUSSION

### I. *Grant of Summary Judgement to RKO.*

■ We review a grant of summary judgment *de novo*, construing all reasonable inferences in favor of the non-moving party. *Shumway v. United Parcel Serv.*, 118 F.3d 60, 63 (2d Cir.1997).

In his complaint, Raine claimed that RKO was obligated to make payments to the Trust notwithstanding that RKO had assigned all rights in its Covered Films and derived no revenue from Covered Films. RKO moved for summary judgment on the ground that Raine's claims were barred by the applicable statute of limitations.

Raine sued on June 9, 1994. The parties agree that New York law applies, and that a six-year limitations period applies to claims for breach of contract that are not governed by the Uniform Commercial Code. *See* N.Y. C.P.L.R. § 213 (McKinney 1990). Raine concedes that his claims are not governed by the Uniform Commercial Code.

■ "Under New York law, a cause of action for breach of contract accrues and the statute of limitations commences when the contract is breached." *T & N, PLC v. Fred S. James & Co.*, 29 F.3d 57, 59 (2d Cir.1994). Thus, any of Raine's claims which accrued before June 9, 1988 are time-barred.

RKO contends that Raine fails to plead any cause of action that accrued after June 8, 1988. RKO maintains that it had no obligation to make payments to the Trust unless it received revenue from Covered Films. It is undisputed that RKO had not received revenues from the Covered Films since 1987, when Enterprises sold Pictures to EAC.

RKO thus argues that if it breached the Agreement at all, it did not do so after 1987.

On appeal, Raine weaves an argument of Byzantine complexity that he presents some timely claims against RKO. Raine maintains that RKO's liability to the Trust did not end when RKO assigned its Covered Films to Pictures over a decade ago. He asserts that RKO remains liable under the Agreement anytime one of the Covered Films is shown on television, even though RKO no longer owns the Covered Films and even though it does not receive a penny from them. Raine also contends that every time RKO misses a payment under this obligation, a new cause of action for breach of the Agreement accrues. Because the Covered Films are still televised frequently, many of these alleged breaches occurred after 1988. Raine concludes that an action on these alleged breaches is not time-barred.

The bedrock of Raine's theory is Paragraph 2(a) of the Agreement, which provides that:

> [e]ach first party agrees to make the payments to the Trustee ... in connection with any ... film which shall be exhibited on television at any time by such first party or by assignees ... or by other users deriving title ... from or through such first party.

Raine reads this to require a first party to make payments to the Trust *whenever* its Covered Films are shown, even if no it longer owns the films or receives revenue from them.

RKO answers that the Agreement requires it to pay into the Trust only when it *receives revenue* from the exhibition of Covered Films. RKO points to Paragraph 2(f) of the Agreement, which provides that if a first party transfers its rights in Covered Films:

> [e]ach first party will be obligated to make payments to the Trustee on account of films dealt with by such grantee only to the extent such first party has received such payment.

We will refer to this provision as the "Liability Exception."

RKO argues that under this Liability Exception, it has not been liable for any pay-

ments to the Trust since 1987, when it last received revenue from Covered Films.

Raine concedes that the Liability Exception, if applicable, exempts first parties from liability under the Agreement unless a first party got revenue from Covered Films. However, Raine interprets the Liability Exception as a conditional "escape clause," available only to first parties who ensure that when they transfer rights in Covered Films, their transferees become first parties to the Agreement. Raine relies on another sentence in Paragraph 2(f), which provides that:

No such grant of right or authority shall be made by any first party ... unless and until such grantee shall become an additional first party to this agreement.

We will refer to this sentence as the "Transferee Requirement."

Wedding these two paragraphs, Raine contends that a first party may invoke the Liability Exception only if it first satisfies the Transferee Requirement. He believes that because RKO did not ensure that Pictures became a first party before it transferred the Covered Films to Pictures, RKO cannot find a haven in the Liability Exception. His argument continues: because RKO cannot rely on the Liability Exception, RKO owes the Trust every time a Covered Film is televised, even if RKO does not own the rights to the film. As noted above, the Covered Films that RKO transferred to Pictures have been shown many times after 1988. Raine concludes that every time one of these Covered Films is shown, a new, timely claim for breach of the Agreement arises.

We reject Raine's argument because: (1) the Agreement does not make the availability of the Liability Exception contingent on satisfaction of the Transferee Requirement; and (2) even if it does, RKO satisfied the Transferee Requirement.

A. *Application of the Liability Exception.*

We conclude that satisfaction of the Transferee Requirement is not a condition precedent to the availability of the Liability Exception. Although both provisions appear in Paragraph 2(f), there is little evidence of a linkage between the two provisions. Paragraph 2(f) provides, in relevant part:

No ... grant of right or authority [over Covered Films] shall be made by any first party, or the successor in interest thereof, to any person, firm or corporation doing business within the United States, Canada, Alaska, Hawaii, and Puerto Rico, *unless and until such grantee is or shall become an additional first party to this agreement as herein provided.* No other such grant of right or authority shall be made by any first party or the successor in interest thereof, unless and until such grantee shall promise to make to such a first party or successor the payments required by this agreement, such payments to be transmitted to the Trustee by such first party. No such first party or successor in interest thereof will, without consent of the Trustee, forgive or compromise such obligation. *Each first party will be obligated to make payments to the Trustee on account of films dealt with by any such grantee only to the extent such first party has received such payment.* (emphasis added).

There is no indication from the language and structure of Paragraph 2(f) that the Liability Exception and the Transferee Requirement are yoked. It would have been very simple to make the Liability Exception expressly contingent on satisfaction of the Transferee Requirement. However, no conditional language links the Transferee Requirement with the Liability Exception or implies that they work together. Moreover, the two provisions are placed at opposite ends of a complex and lengthy paragraph. If these provisions were intended to work in tandem, good drafting would have placed them in closer proximity.

This interpretation of Paragraph 2(f) is supported by another provision of the Agreement. Schedule I to Paragraph 2(a), which describes the payment obligations of first parties, provides that "payments hereunder shall not accrue until such revenues have been received [by the first party]." Thus, Schedule I reiterates the substance of the Liability Exception. However, application of Schedule I is not made contingent on satisfaction of the Transferee Requirement.

We therefore conclude that under the Agreement, first parties are required to make payments to the Trust only if they receive revenue from Covered Films.

B. *Satisfaction of the Transferee Requirement.*

■ Even accepting Raine's strained interpretation of the Agreement, RKO is entitled to the protection of the Liability Exception because RKO's transferee was, as a practical matter, a first party to the Agreement.

RKO assigned all interest in its Covered Films to Pictures in 1984. At the time, Pictures was a wholly-owned subsidiary of RKO. Paragraph 8 of the basic Agreement provides that "[t]he obligations imposed by this agreement shall be binding . . . upon subsidiaries of each first party." Pictures ratified its liability under this provision when it assumed all of RKO's liabilities in connection with the Covered Films. Thus, Pictures was liable under the Agreement in the same manner as a first party.

Indeed, in his complaint, Raine himself alleged that Pictures was liable to the Trust because Paragraph 8 "specifically binds subsidiaries of Signatories." Thus, even Raine recognized that Pictures was liable in the same manner as a first party.

Raine maintains that to satisfy the Transferee Requirement, Pictures had to *actually sign* the Agreement, which, of course, it did not. His argument has no merit. Paragraph 8 of the Agreement makes Pictures liable in the same manner as a first party, with or without a signature.

For the reasons explained above, RKO was obligated to pay the Trust only when it received revenue from the exhibition of Covered Films. RKO did not receive any such revenue after 1987. Consequently, it did not breach the Agreement after 1987. All of Raine's claims against RKO are therefore time-barred.

II. *Grant of Summary Judgment to Turner.*

■ Raine sought to hold Turner liable under a third-party beneficiary theory.

Raine claimed that the Trust was an intended beneficiary of Turner's agreement to assume EAC's and Pictures' liabilities with respect to the Covered Films. Judge Cote rejected Raine's argument, holding that Raine failed to create a triable issue of fact whether the Trust was an intended beneficiary. We affirm the grant of summary judgment to Turner for substantially the reasons set forth in Judge Cote's Opinion. *Raine v. RKO General Inc.,* No 94 Civ. 4986(DLC), 1996 WL 131816 (S.D.N.Y. March 22, 1996).

### CONCLUSION

Judge Cote was correct in granting summary judgment to both RKO and Turner. Accordingly, the judgment of the district court is hereby AFFIRMED.