TEXACO A/S (DENMARK); S.A. Texaco Belgium N.V.; and Texaco Nederland B.V., Plaintiffs–Appellants,

v.

COMMERCIAL INSURANCE CO. OF NEWARK, NJ; United States Fidelity and Guaranty Company; Granite State Insurance Company; and The Insurance Company of the State of Pennsylvania, Defendants–Appellees.

Docket No. 97–7248.

United States Court of Appeals, Second Circuit.

Argued April 29, 1998.

Decided Nov. 10, 1998.

John E. Heintz, Howrey & Simon, Washington, D.C. (Wendy Oatis, Howrey & Simon; Patrick M. McGovern, Zevnik Horton Guibord & McGovern, New York City, on the brief), for Plaintiffs–Appellants.

Eugene Wollan, Mound, Cotton & Wollan, New York City (Costantino P. Suriano, Renee M. Plessner, Michael T. Altman, on the brief), for Defendants–Appellees.

Wiley, Rein & Fielding, Washington, D.C. (Laura A. Foggan, Daniel E. Troy), for Amicus Curiae, Insurance Environmental Litigation Association.

Before: VAN GRAAFEILAND, MESKILL, and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

Plaintiffs Texaco A/S, Texaco Belgium, and Texaco Nederland (collectively, "Texaco Europe") appeal from the partial summary judgment of the United States District Court for the Southern District of New York (John F. Keenan, *Judge* ), dismissing the portion of their insurance coverage action that sought a declaration that they were entitled to indemnity under certain policies issued by the defendants (collectively, "AIU").[1] The District Court based its determination on Texaco Europe's failure to establish either a judicial determination of its liability to a claimant or the existence of a settlement approved by AIU. Instead, the Court concluded that Texaco Europe had identified only claims that were either voluntarily settled, still awaiting final judicial determination, or not as yet filed by claimants. It recognized that Texaco might have been entitled to indemnity for voluntary settlements if AIU had denied coverage to a claim or category of claims. However, the Court concluded that Texaco Europe failed to show that such a denial had occurred. At the District Court's direction, judgment was entered as to this claim on January 21, 1997, pursuant to Fed.R.Civ.P. 54(b).[2] On this appeal, we conclude that the District Court erred in its determination that Texaco Europe has failed to adduce evidence sufficient to raise an issue of material fact as to AIU's denial of coverage, and accordingly vacate and remand.

## I.

### A. *Factual Background*

The following facts appear to be undisputed, unless otherwise indicated.

The three plaintiff entities we have styled "Texaco Europe" own and operate fuel service stations and associated facilities in Denmark, Belgium, and the Netherlands. Though they now are wholly-owned subsidiaries of Texaco Inc. ("Texaco"), they are successors in interest to three entities formerly owned by Chevron Oceanic, Inc. ("Chevron"): Chevron Oil A/S, Chevron Oil Belgium N.V., and Chevron Investments (Nederland) Inc. (these three predecessor entities collectively, "Chevron Europe"). In a series of agreements dated April 1, 1984, Texaco Europe acquired all outstanding stock of the predecessor companies in exchange for cash.

Between May 2, 1967 and April 1, 1984, Chevron Europe was covered by com-

---

**1.** Each of the defendant insurance companies is part of American International Underwriters and American International Group.

**2.** Rule 54(b) provides, in relevant part, that

[w]hen more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. Fed.R.Civ.P. 54(b).

prehensive general liability insurance policies issued by AIU (the "Chevron policies"). Texaco Europe thereafter purchased similar but not identical insurance coverage from AIU (the "Texaco policies"). In liability insurance policies generally, the insurer assumes both a *duty to indemnify* the insured—that is, "to pay all covered claims and judgments against the insured"—and a *duty to defend* "any lawsuit brought against the insured that alleges and seeks damages for a covered event, even if groundless, false or fraudulent." 1 Eric Mills Holmes, *Holmes's Appelman on Insurance* § 1.15, at 66 (2d ed.1996). The insurance policies at issue here included duty-to-defend and duty-to-indemnify provisions, and covered claims for, among other things, property damage liability.

Texaco Europe asserts that, since April 1, 1984, it has received over five hundred requests, lawsuits, and demands from private and governmental entities seeking Texaco's investigation and "remediation" of environmental damage arising out of pre–1984 activities at thirty-five former Chevron facilities (the "test sites"). Texaco Europe notified AIU of at least six test site claims.[3] Although a local AIU claims handler initially filed two of those claims under the Chevron policies because they were based on damage that had allegedly occurred during Chevron's ownership, AIU subsequently took the position that the claims should be filed under the Texaco policies instead, because the first notice of the claims arose during Texaco's ownership.

In November 1988, AIU directed its claims handler that "any reported claims after [April 1984] become claims charged to *Texaco*"; the claims handler allegedly informed Texaco Europe of AIU's position by at least the end of 1988. On October 30, 1989, Texaco Europe wrote to AIU demanding that the six test site claims be reassigned to the Chevron policies. AIU refused by letter dated January 26, 1990. In that letter, AIU stated:

The standard which applies to these cases is one where ... [AIU] establishes a claim file according to the reporting date, or the date of first notice to the [insurer]. . . . [A]s Texaco was the last owner of the properties at the time the pollution was reported, the Texaco policies would respond.

The practical differences between having the claims handled under the Chevron policies rather than the Texaco policies are not entirely clear, but this litigation is proof enough that the differences are significant. There is information in the record to suggest that AIU would bear the entire expense (above the policy's deductible) for claims attributed to Chevron policies for 1968–1975. By contrast, under the post–1975 Chevron policies and all the Texaco policies, it appears that the entire liability would be borne by a reinsurer affiliated with Texaco.

AIU proceeded to handle the submitted claims under the Texaco policies, pursuant to which it denied at least three claims (based, Texaco Europe contends, on limits contained in the Texaco policies but not in the Chevron policies), offered to pay two claims, and offered to defend the sixth claim. Texaco Europe acknowledges that it did not file or assert any further claims with AIU after receipt of the January 26, 1990 letter. Texaco Europe instead investigated and/or settled on its own a number of complaints and demands for remediation—allegedly including clean-up notices and demands from government regulatory authorities.

Texaco Europe filed this action on April 23, 1990, seeking a declaratory judgment that AIU was obligated to defend and to indemnify Texaco Europe *under the Chevron policies* with respect to any environmental damage alleged to have occurred prior to April 1, 1984, and seeking damages for AIU's breach of those contractual duties.

### B. *Procedural History*

Texaco Europe's amended complaint set forth two interrelated causes of action: In

---

**3.** The parties appear to disagree over whether notice was given on six or seven claims. For sake of convenience, we refer in the remainder of this opinion to notice given on "six" claims, rather than on "at least six" claims. We do not mean, however, to preclude the possibility that notice was actually given on all seven.

the first, AIU sought a declaratory judgment to specify (1) AIU's duty to defend Texaco Europe under the Chevron policies "in connection with claims, demands and actions" concerning property damage that allegedly or potentially occurred during Chevron's ownership of the sites and (2) AIU's duty to indemnify Texaco Europe with respect to such actual property damage.[4] In the second cause of action, Texaco Europe asserted a breach of contract arising from AIU's handling of the six filed claims, and sought money damages.

The parties cross-moved for summary judgment on a number of grounds. The District Court initially resolved one significant issue in favor of Texaco Europe—namely, whether as Chevron Europe's successor, it could assert claims as the named insured under the Chevron policies. Reasoning that Texaco Europe was entitled to the benefit of Chevron Europe's insurance coverage, the Court granted partial summary judgment in favor of Texaco Europe on this question. (This issue lies beyond the scope of the present appeal, and we assume, without deciding, that Texaco Europe functions as the named insured under the Chevron policies.)

Although it regarded Texaco Europe as the named insured under the policies, the District Court held that Texaco Europe had failed to establish AIU's duty to indemnify. Accordingly, the Court granted AIU's motion for summary judgment. In so doing, the Court invoked a provision of the insurance policies—commonly known as a "no-action" clause—which the Court read to prohibit an action by the insured to seek indemnity from the insurer, in the absence of either a judicial determination of the insured's liability or a written settlement to which the insurer was also a party. The relevant portion of that clause reads as follows:

No action shall lie against the [insurer] unless, as a condition precedent thereto, the insured shall have fully complied with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant, and the [insurer]. Any person ... who has secured such judgment or written agreement shall thereafter be entitled to recover under the terms of this policy in the same manner and to the same extent as the insured. Nothing contained in this policy shall give any person or organization any right to join the [insurer] as a co-defendant in any action brought against the insured to determine the insured's liability.

The District Court held that Texaco Europe's claims for indemnity were unavailing because Texaco Europe had failed to satisfy the condition precedent to suit against AIU—namely, a legal obligation to pay, determined either by legal judgment or by a settlement authorized by AIU. Instead, the Court noted that Texaco Europe had voluntarily, and without the participation of AIU, settled the majority of the third-party claims for which it sought indemnity. The District Court did recognize that Texaco Europe was, at the time, defending two suits involving environmental property damage at a test site; however, the Court held that Texaco Europe would be able to bring an action for indemnity as to these claims only upon adjudication of Texaco Europe's legal liability.

The District Court acknowledged the existence of an exception to the condition precedent: if AIU had denied coverage of Texaco Europe's claims, Texaco Europe would be entitled to indemnification even if it elected to settle those claims (instead of litigating to judgment). But the Court held that this exception was unavailable to Texaco Europe because AIU had never received notice of (and, by implication, must never have "denied") all but six of Texaco Europe's claims.

Upon its entry of summary judgment for AIU, the District Court dismissed the action

---

4. Texaco Europe's complaint also seeks declarations (1) that "for purposes of applying defendants' insurance policies, damages arising out of the storage, handling and distribution of gasoline and other petroleum derivatives at plaintiffs' ... facilities ... shall be considered as arising out of one 'occurrence,'" and (2) that Texaco Europe "has a right to designate the specific insurance policies and policy years to which defendants are obligated to defend and indemnify plaintiffs." These matters are not presented in the present certified appeal.

in its entirety. After Texaco Europe moved for reconsideration, the District Court acknowledged that its decision had addressed only AIU's duty to indemnify, and had not disposed of Texaco Europe's two other claims—those sounding in duty to defend and breach of contract. Accordingly, it reinstated the action with respect to those claims.

The parties agreed that the summary judgment on the duty to indemnify was severable from the remaining claims and amenable to certification as a final judgment under Fed.R.Civ.P. 54(b). Judge Keenan certified the partial summary judgment—confined only to the issue of the duty to indemnify— and Texaco Europe's timely appeal followed.

## II.

■ Because subject matter jurisdiction in this case is based on diversity of citizenship, we would normally be guided by the choice-of-law principles of the forum state, which in this case is New York, *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir.1996), and in turn these principles might, under some circumstances, direct us to apply the substantive law of a jurisdiction other than New York. However, the parties agree that New York substantive law governs the issues presented on this appeal,[5] and "where the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry." *American Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir.1997).

■ We review a grant of summary judgment *de novo*, construing all reasonable inferences in favor of the non-moving party. *Raine v. RKO General, Inc.*, 138 F.3d 90, 93 (2d Cir.1998). Moreover, in reviewing the interpretation of the parties' insurance poli-

cies, "[t]he proper standard for appellate review of a pure textual construction by the district court, whatever the procedural posture of the case, is de novo." *Bellefonte Reinsurance Co. v. Aetna Casualty & Surety Co.*, 903 F.2d 910, 912 (2d Cir.1990).

## III.

■ The key principles governing this appeal are as follows: First, the policies at issue obligate AIU to indemnify Texaco Europe "for all sums which the insured shall become legally obligated to pay as damages because of property damage." Second, the policy grants Texaco Europe the authority to settle property damage claims "not in excess of $500.00 per accident," but otherwise states that Texaco Europe "shall not, except at [its] own cost, voluntarily make any payment, assume any obligation or incur any expense."[6] Finally, notwithstanding the latter requirement, New York law provides that "[w]hen an insurer declines coverage, . . . an insured may settle rather than proceed to trial to determine its legal liability." *Luria Bros. & Co. v. Alliance Assurance Co.*, 780 F.2d 1082, 1091 (2d Cir.1986); *accord Isadore Rosen & Sons, Inc. v. Security Mutual Ins. Co.*, 31 N.Y.2d 343, 347–48, 339 N.Y.S.2d 97, 101, 291 N.E.2d 380 (1972). Under such circumstances—where there is a "denial of coverage"—the insured will be entitled to recover the settlement amount "so long as a potential liability on the facts known to the insured is shown to exist, culminating in a settlement in an amount reasonable in view of the size of possible recovery and degree of probability of claimant's success against the insured." *Luria Bros.*, 780 F.2d at 1091 (internal quotation marks, bracketing, and alterations omitted).

The District Court acknowledged the existence of this "denial of coverage" exception, but held that it was unavailable to Texaco

---

**5.** The parties have simply agreed that New York law governs the interpretation of the insurance policies at issue on this appeal. We intimate no view on the law that might govern their underlying obligations to third parties—such as tort plaintiffs and governmental entities.

**6.** The District Court focused on the policies' "no-action" clause, which, among other things, reiterates both of these requirements in summary

form. The parties divide over the propriety of applying the no-action clause in *suits by an insured*—rather than suits by a third party claimant against the insurer. Because we apply the same principles as did the District Court, without relying on the no-action clause, we need not decide whether the no-action clause would be appropriately invoked in this case.

Europe in the circumstances presented here. The District Court stated that the exception did not apply to Texaco Europe because "[a]n insurer has no duty to defend or indemnify until it has been given notice of a suit or claim," and Texaco Europe had given AIU notice of only six claims. For two reasons, we disagree.

First, the District Court seems to have concluded that the "denial of coverage" exception is inapplicable in this case because Texaco Europe notified AIU of only six claims. However, even under the District Court's reasoning, Texaco Europe has alleged that it gave notice of—and was denied coverage for—*those six claims*. At the very least, then, it was error to grant summary judgment and dismiss Texaco Europe's cause of action with respect to those six claims.

■ Second, and more importantly, the District Court seems to have implicitly reasoned that if AIU did not receive notice of each and every claim, AIU could not "deny" them, and hence that the "denial of coverage" exception was unavailable to Texaco Europe. In our view, an insurer's across-the-board denial of coverage may excuse the insured party from providing notice of each individual claim. We previously have held that if an insurer issues a blanket denial of coverage with respect to a certain category of claims, it effectively denies liability—and waives the policy's notice requirements—for each claim that falls within that category. *See H.S. Equities, Inc. v. Hartford Accident & Indem. Co.*, 661 F.2d 264, 270–71 & n. 6 (2d Cir.1981) (blanket denial waives notice); *H.S. Equities, Inc. v. Hartford Accident & Indem. Co.*, 609 F.2d 669, 673 (2d Cir.1979) (upholding conclusion that denial of liability for particular claims, coupled with general justification for denial of category of claims, was legal equivalent of denial of other claims in category). Thus, if Texaco Europe is cor-

rect in asserting that AIU issued a blanket denial of coverage for any claims under the Chevron policies, then Texaco Europe may be deemed excused, as of the date of that blanket denial, from giving AIU notice of any further claims within the scope of that denial.

■ The District Court, however, never determined whether or when such a blanket denial of coverage by AIU occurred—and as to this material fact, there remains a genuine dispute between the parties that precludes summary judgment. Texaco Europe points to the text of the January 26, 1990 letter (quoted above) as evidence of AIU's blanket denial of coverage under the Chevron policies. In that letter, an AIU representative informed Texaco Europe that all claims filed after April 1, 1984 would be handled under the Texaco Europe policies, rather than the Chevron policies. Texaco Europe also asserts that it received a similar, unequivocal denial of coverage under the Chevron policies by "late November 1988," though the only apparent record evidence of this communication is not clear as to when the communication was sent.[7]

In any event, AIU appears to concede that it informed Texaco Europe, at least by January 1990, that it intended to handle all of Texaco Europe's claims under the Texaco policies, rather than the Chevron policies. However, AIU maintains that it did not "deny" Texaco Europe any coverage, but simply "allocated" Texaco Europe's claims to a different set of policies (the post–1984 Texaco policies, rather than the pre–1984 Chevron policies). We find this distinction unpersuasive. Although AIU processed Texaco Europe's six claims under the Texaco policies, it refused to process them under the Chevron policies—and hence effectively denied coverage under the Chevron policies. The fact that Texaco Europe ultimately re-

7. For the proposition that AIU communicated its putative blanket denial to Texaco Europe in "late November 1988," Brief for Plaintiffs–Appellants at 34, Texaco Europe cites to pages 11 and 12 of its own brief. On those pages, Texaco Europe states that AIU communicated its position *to AIU's local claims handler*, Piet de Waard, by memorandum dated November 29, 1988. *See id.* at 11. Texaco Europe further states that "Mr. de Waard informed Texaco Europe of AIU's change

in policy," and cites pages 513–14 of the Joint Appendix. *Id.* at 12. Those pages of the Joint Appendix contain the deposition testimony of Bernardus A.N. Grobben, a former Texaco Europe employee. Grobben stated that he did not remember when de Waard informed him of AIU's position, but speculated that it could have been during 1986 or 1987. *See* Joint Appendix at 514.

ceived some coverage through other means (namely, under the Texaco policies) does not change the fact that Texaco Europe was denied coverage to which it believes it was entitled under the Chevron policies. Significantly, Texaco Europe asserts that as a result of AIU's refusal to handle the claims under the Chevron policies, and its insistence on attributing them to the Texaco policies instead, Texaco Europe received less coverage than it would have been entitled under the Chevron policies.

AIU also asserts on appeal that "[m]ost of the sums that Texaco spent to remediate its sites, and for which it currently seeks coverage, were spent before November of 1988"— the earliest date on which Texaco Europe has asserted that it received AIU's purported blanket denial. At present, the record allows us to determine neither the accuracy of AIU's contention nor the precise date on which Texaco Europe first became aware of AIU's putative denial. Although we conclude that both of these issues must be decided by the trier of fact, we hold that Texaco Europe cannot claim any benefit under the "blanket denial" theory for expenditures made prior to any receipt of such a denial.

Finally, we address one additional issue that may be relevant on remand. With regard to Texaco Europe's claimed remediation expenses, there is a suggestion in the District Court's decision that AIU's duty to indemnify would be limited to sums incurred in the settlement of *lawsuits*. However, under New York law, the insurer's duty to *defend* may be triggered by an administrative agency's demand letter that "commences a formal proceeding against [the insured], advising it that a public authority has assumed an adversarial posture toward it, and that disregard of the ... demands may result in the loss of substantial rights by [the insured]." *Avondale Indus., Inc. v. Travelers Indem. Co.*, 887 F.2d 1200, 1206 (2d Cir.1989). But this duty will not be triggered where an insured simply receives a letter inviting voluntary remediation. *See id.; accord Ryan v. Royal Ins. Co.*, 916 F.2d

731, 737–738, 742 (1st Cir.1990) (applying New York law); *Technicon Elec. Corp. v. American Home Assurance Co.*, 141 A.D.2d 124, 533 N.Y.S.2d 91, 104–05 (2d Dep't 1988), *aff'd on other grounds*, 74 N.Y.2d 66, 544 N.Y.S.2d 531, 542 N.E.2d 1048 (1989). Moreover, the insurance contract at issue in this case obligates AIU to indemnify Texaco Europe "for all sums which the insured shall become legally obligated to pay as damages because of property damage," not just those incurred as a result of lawsuits. Accordingly, if on remand Texaco Europe is able to establish to the satisfaction of the trier of fact (1) that AIU issued a blanket denial of coverage, and (2) that its remediation costs were in response to governmental compulsion, it will be entitled to indemnity from AIU on those costs.[8]

### IV.

To summarize:

(1) If Texaco Europe can demonstrate to a trier of fact that AIU issued a "blanket denial" of coverage, it would have been free, as a matter of law (upon receipt of such a denial), to reasonably settle claims without notifying AIU or obtaining AIU's preauthorization.

(2) Texaco Europe has succeeded in raising a material issue of fact as to whether AIU issued such a blanket denial.

Accordingly, we vacate the certified partial summary judgment, and remand for proceedings consistent with this decision.

No costs.

---

8. In stating that Texaco Europe "will" be entitled to indemnity under those circumstances, we do not mean to foreclose the possibility that AIU could successfully raise arguments and defenses not presented on the instant appeal.